J. H. MURRAY v. WILLIAM E. STALNAKER, et ux.

16 So. (2nd) 650     January Term, 1944
February 8, 1944     Division B
Rehearing Denied February 23, 1944

*Bryan & Bryan,* for appellant.

*M. Caraballo* and *John G. Graham,* for appellees.

THOMAS, J.:

The appellant was plaintiff in the chancery court; the appellees, defendants, so we will use these respective titles interchangeably in our discussion of the case.

A bill was filed seeking foreclosure of a purchase-money mortgage given to secure ·a note for $1950.00 payable in monthly installments of $18.00. Each of them was to be used first to pay accrued interest, and any remainder was to be applied to principal until the debt should be eventually discharged. Privilege was given the makers to pay all or part of the principal at any time.

It was stipulated that if the mortgagors should satisfy the note, keep the premises insured, pay the taxes laid from time to time, and commit no waste the estate should "determine." Also it was agreed that in event default of principal or interest should continue for thirty days the mortgagee should have the option to declare the whole sum due and that all monies paid by him for insurance premiums and taxes should be secured by the mortgage.

It was charged in the bill that defendants had become delinquent in the payment of principal and interest and had failed to pay certain taxes; wherefore the plaintiff declared the entire amount due. The execution of the instrument was not denied in the answer, but plaintiff's right to relief was vigorously challenged. It was alleged "That while it is true that . . . defendants did not pay the installments . . . upon said promissory note" due in August and September, 1941, February, April, June, August, and December, 1942, and February, 1943, they made payments credited by the plaintiff and shown on the schedule attached to the bill of complaint, the last one seven days before the bill was filed.

We are somewhat puzzled by this position. The note was executed March 27, 1941. The payments shown in the exhibit and recognized by the defendants number sixteen. These, under our interpretation of the instrument, were the ones due from April 27, 1941, to and including July 27, 1942, regardless of the time they were actually made. The parties are in accord on the date of the last payment, March 2, 1943.

Continuing, the answer contained the averment that "no notice was ever given . . . defendants requiring them to make up the arrears. . . ." It was further alleged that "plaintiff repeatedly assured . . . defendants that he would carry the unpaid payments for the interest of six (6%) per cent . . . upon which [representations] these defendants had the right to rely, and did rely, the plaintiff lulled these defendants into a false sense of security." With reference to the taxes it was stated that "plaintiff voluntarily offered to pay the taxes that had accrued . . . and would carry the same with interest at the rate of six (6%) per cent per annum. . . ."

The chancellor concluded that "the plaintiff . . . was not entitled to exercise his option [to accelerate the debt] without first giving the defendants, by some affirmative action, notice of his intention to declare the entire amount due" and dismissed the bill with prejudice.

By the bill, answer, and reply the issue was presented whether waste had been committed by the appellees. We think we need not pass upon this aspect of the case, however, as plainly the salient point for our determination is the

propriety of the chancellor's ruling that the suit should be dismissed because foreclosure for the whole debt was not justified. Decision of it depends upon the construction of the instrument, the alleged arrangement, and the conduct of the mortgagee.

The note provided that the "interest [should] first be deducted from each installment as made and the balance thereof applied to the principal . . ." until the credits on the latter amounted to $1950.00. According to the schedule, which seems undisputed, installment payments were made at irregular intervals, the longest period of time between them having been 79 days. It is obvious to us that it was the intention of the parties that at the time of the payment of each installment there should be computed the interest on the balance of the principal remaining after the preceding installment and that the remainder, after deducting this item from the $18.00, should be applied to the principal. There had been a default in the payment of the principal before filing the bill, and at that time the total amount of unpaid balance approximated $1900.00. Therefore, although on March 2, a few days before the suit was instituted, the interest was not in arrears, there was a default in the principal warranting the plaintiff in invoking the provision of the mortgage that upon default in the payment of the money or any part thereof he could consider the whole of the principal sum due and payable.

The allegations with reference to plaintiff's having lulled the defendants into a false sense of security by assurances that he would carry the past due installments at six per cent interest seem wholly insufficient to establish any agreement that would affect the terms of the original instrument. Details of this conduct on his part were lacking in the pleading, and no consideration whatever was stated to support any variation of the obligation. Under the very provisions of the mortgage it was intended that the unpaid principal should bear six per cent until paid. Because of vagueness and want of consideration these so-called assurances cannot be dignified as an alteration of the instrument. According to the pleading nothing was proposed by them that was not

comprehended in the mortgage. Blair v. Howard, et al., 144 Fla. 421, 198 So. 80. These allegations, therefore, were of little consequence in establishing a basis for the testimony of any subsequent agreement between the parties affecting the mortgage and would be of no value to the defendants except when considered with other circumstances that might indicate that the mortgagee by his conduct waived the right to accelerate the debt, particularly when he failed to give any notice of his election, other than institution of suit.

The appellee, Bertha Stalnaker, testified that she had never discussed taxes or installments with the appellant, though she knew payments had not been made in compliance with the requirements of the mortgage. The other appellee stated on the witness stand that he had no "agreement with him [appellant] about the payment of the note." He had, according to his testimony, been reminded that he was delinquent in the payment of taxes and when appellant had offered to make them for him had replied, "no I will have money from the sale of bonds to pay the taxes." It is patent that the evidence not only failed to establish a subsequent arrangement inconsistent with the provisoins of the note and mortgage, but also to show any demeanor on the part of the appellant which misled the appellees or placed himself in a position where he became estopped to declare the total indebtedness due by simply bringing suit.

The vital question, according to the chancellor's interpretation of the pleadings, the evidence, and applicable law, was the right of the plaintiff to declare the entire debt due, and he reached the conclusion that although but sixteen of the twenty-three payments falling due had been made, and these irregularly, the bringing of the suit was not alone sufficient notice of the exercise of the option to accelerate. It was his view that because of these circumstances and the added ones that the mortgagee had voiced no objection while payments proceeded and there had been no "complete cessation of payments" the plaintiff acquiesced "in this course of conduct so as to require some affirmative action, on his part, such as notice, before he may be permitted to declare the entire amount as immediately due and payable." Cases cited

by him were Jaudon v. Equitable Life Assurance Society of United States, 102 Fla. 782, 136 So. 517, 521, and Clay v. Girdner, 103 Fla. 135, 138 So. 490.

In the circumstances related in the first case it was held that a waiver was implied and that "though a 'waiver' does not arise from mere forbearance for a reasonable time, it may be inferred from the mortgagee's passive acquiescence in mortgagor's neglect to perform conditions binding upon him and that 'a mortgagee may by his conduct, inducing others to believe and act upon the belief that he will not enforce his mortgage, be estopped as to them from doing so'."

This pronouncement, relied upon by appellees, was made in determining the question whether the chancery "court erred in awarding solicitor's fee to complainant's solicitor." The facts giving rise to the question, when compared to the ones in the instant case, demonstrate that because waiver was implied from them it does not follow that it will be implied here.

The creditor had indulged the debtor in the payment of interest and principal. Nearly five months after default of a certain payment due for principal and interest the mortgagee was notified by the original mortgagor that the papers had been sent to an attorney with whom he could confer about paying the debt. The mortgage had been assigned, and when the attorney was consulted it was learned that the assignee had already instituted suit. The mortgagor then offered to pay all amounts in arrears, but failure of the efforts of compromise was evidently chargeable to inability of the mortgagor and the attorney for the assignee to agree upon the amount of a reasonable fee at that stage of the proceedings. The gist of the ruling was that acceleration of the whole amount was actually caused by the disagreement over the fee, and that this did not defeat the waiver brought about by the indulgence of the creditor and the negotiations for payment which had reached the point of an offer by the debtor and an acceptance. In the language of the opinion "The offer of defendant to pay the installment interest and costs then due having been accepted by complainant, such

acceptance might have the effect to waive the option to accelerate the whole debt, as no particular amount of attorney's fee appears to have been agreed to." It was written that "the defendants offered to pay all amounts due [to the time of the inception of the negotiations with the attorney] including all costs, and that complainant's solicitor advised that the offer was agreeable to complainant, but that solicitor (and not complainant) refused to accept said payment, unless an attorney's fee of $600 was then paid to solicitor." "Defendant offered $150 and complainant's solicitor demanded $600, as a reasonable fee at that time."

From our study of the opinion and an examination of the original file we have arrived at the conclusion that this case is not so similar to the present one as to become authority for a decision in appellees' favor.

The facts in the second case cited, Clay v. Girdner, supra, also appear essentially unlike those in the instant one. Negotiations toward the settlement of the whole debt were pending for nearly a month and a half when suddenly terminated by the holder of the note and mortgage; interest payments were tendered and refused; two days after the negotiations collapsed suit was brought tendering amounts due and seeking enforcement of tender, but defendants could not be located for service; two weeks later one was instituted to foreclose the mortgage.

We think that this case is no exception to the rule that the election to accelerate the whole debt may be exercised by filing a bill of complaint to foreclose the mortgage. We have found no facts which, in our opinion, constitute a waiver on the part of the mortgagee requiring some further notice than the institution of the suit. It is certain that fewer than the required number of payments had been made. It is clear to us that when installments paid are applied as the note provided in definite language a default in principal is shown to have occurred a few months before the bill was filed. The allegations of assurances that parts of the debt would be carried at six per cent interest are hardly more than a reiteration of the terms of the mortgage. Assuming they had been given, it is difficult to see how they could have misled

the debtor because the language of the instrument was quite plain, and he was thoroughly familiar with it. We have not found in the record information justifying a decision that the mortgagee so conducted himself with reference to the indebtedness that he could be charged with estoppel.

It is our conclusion that the decree dismissing the bill with prejudice was erroneous and that one should be entered in favor of the plaintiff.

Reversed.

BUFORD, C. J., BROWN and SEBRING, JJ., concur.