67 So.2d 537 (1953)
AUGUST TOBLER, Inc.
v.
GOOLSBY et ux.
Supreme Court of Florida. Division B.
October 16, 1953.
Anderson & Nadeau, Miami, for appellant.
Ross & Williams, Ft. Lauderdale, for appellees.
HOBSON, Justice.
In 1952 appellees, Mr. and Mrs. Goolsby, were the owners of a tract of 215 acres of land in Broward County. In June of that year they entered an agreement with appellant, August Tobler, Incorporated, a Connecticut corporation, pursuant to which Tobler received a deed to 30 acres of the Goolsby land, and simultaneously paid $5,000 in cash and executed two promissory *538 notes aggregating $25,000, payment of which was secured by a mortgage on the 30 acres. The first note secured by the mortgage was payable on or before September 2, 1952. The Goolsbys also gave Tobler an option to buy the remaining 185 acres at $1,000 an acre, and this option contained the following provisions, among others:
"* * * and if the sums of money secured by the purchase money mortgage hereinafter referred to are paid when same become due, said option shall continue and remain in effect for a period of five years from the date hereof. * * *
"* * * or if there should be any default in the payment of the purchase money mortgage hereinafter referred to, the remainder of said option shall terminate and become null and void and of no further force and effect."
"(6) Anything in this Option Agreement to the contrary notwithstanding, any default in payment of that certain purchase money mortgage securing the sum of $25,000.00, executed by Second Party herein, as mortgagor, to First Parties herein, as mortgagees, encumbering property in Broward County, Florida, described as: [described] shall terminate and invalidate said option, and said option shall become null and void and of no further force and effect." (Italics supplied.)
The mortgage contained a very specific acceleration clause and the usual grace period language had been deliberately eliminated by the parties.
The first note was not paid on the due date of September 2, 1952, and the following day the Goolsbys instituted suit to foreclose the mortgage in its full amount and for a decree declaring the option invalid according to its terms.
After process was served the Goolsbys heard from Tobler for the first time since June, 1952, when the transaction was closed, but formal tender was not made until September 8, 1952, when Tobler answered the foreclosure suit and deposited into the registry of the court $10,500 representing principal and interest on the first note. Tobler's position then as now was that the default was caused by a simple oversight. The trial court foreclosed the mortgage for the accelerated amount and declared the option at an end. This appeal followed.
The Goolsbys' right to foreclose the mortgage is not in question here, nor is Tobler's right to redeem. Tobler is concerned primarily with the option agreement, contends that its termination is a forfeiture, which equity should not countenance, and asserts that the chancellor's failure to reinstate it was error.
As Tobler contends, mortgage and option were part of the same transaction. By paying, without default, the mortgage installments on the 30 acres, Tobler could have kept the option in force, and, if the election to exercise the option had been made, could have purchased the remainder of the tract. The Goolsbys, on the other hand, had a right to require compliance with the only condition upon which the continued life of the option depended: payment of the sums secured by the mortgage "when same become due", without "default."
Tobler places great emphasis upon the case of Forssell v. Carter, 65 Fla. 512, 62 So. 926. But this case holds no more than that where a contract for the sale of land reserves to the vendor the option, for breach of covenant, of declaring the contract terminated and all payments thereunder forfeited, he must give the vendee notice of his intention to declare the forfeiture. Absent such notice, a suit for specific performance by the vendee was successful under the circumstances of the case. In the case now before us, however, notice of dishonor having been waived by the language of the notes, the only notice which the law could have required of the Goolsbys was of their election to accelerate the debt, which was effectively accomplished by the *539 filing of the foreclosure suit. Murray v. Stalnaker, 154 Fla. 64, 16 So.2d 650. And the instant case does not involve the forfeiture of any sum of money. Indeed, the Goolsbys, through their counsel, offered in open court to refund Tobler's initial payment of $5,000, but the offer was refused.
It is plain that as a matter of law the option fell with the default. But are there special equities in this case which render this result so unconscionable that the chancellor was in error in reaching it? To support the contention that this question should be answered in the affirmative, Tobler points out that it contemplated using the entire tract for a housing project, that it spent money in arranging for financing, and that it attempted to commence construction. But the "construction" consisted of depositing a small amount of old lumber on the land, which was done long after the default, with the property already in litigation. And it is worth noting that no benefit from this activity ever accrued to the property to make it inequitable for the Goolsbys to retain it. Cf. Highlands Home Builders, Inc., v. Marine Bank & Trust Co., Fla., 61 So.2d 505. The equity in favor of the Goolsbys, on the other hand, is that their property, of a value of at least $215,000, was tied up for a period of three months in an active market for the comparatively small consideration of $5,000, without any suggestion from Tobler as to its intentions.
Giving Tobler the benefit of every doubt, we can say no more than that the equities here are equal and that consequently the maxim "Equity follows the law" is applicable. Although, as the writer observed in Barbash v. Barbash, Fla., 58 So.2d 168, 171, this maxim cannot be regarded as a general principle, it was also pointed out there that only in those cases where "the equities and good conscience point unerringly toward the correctness of the position of one litigant and against that of the other" may equity give some flexibility to the harsh, rigid and usually inexorable principles of the common law. Where the equities are equal, the law must prevail. The picture limned by the record here is entirely different from that in the lease forfeiture cases which Tobler cites. And the facts of this case likewise differ from the situation before the court in Nevins Drug Co. v. Bunch, Fla., 63 So.2d 329. In that case we found that the lessee had tendered payment by check before the due date of the rental payment, and that although payment was refused by the drawee bank upon presentation of the check, the evidence showed that the lessee actually had on deposit in the bank sufficient funds to cover the check.
We must agree with the learned Chancellor that the option agreement could not be reinstated after it was terminated and became null and void by its own terms upon the failure of Tobler to pay the mortgage note due September 2, 1952.
The reasonableness of attorney fees allowed by the Chancellor is contested by Tobler, but these fees were determined after a full hearing, and no error is made to appear.
Other questions are raised, but we find them without merit. Under the circumstances of this case, we can but conclude that this Court has no power to rewrite the contract of the parties.
Affirmed.
ROBERTS, C.J., and THOMAS and DREW, JJ., concur.