856 So.2d 1047 (2003)
Emil COLTEA, Appellant,
v.
Gabriela COLTEA, Appellee.
No. 4D02-100.
District Court of Appeal of Florida, Fourth District.
October 1, 2003.
*1048 John M. Bernazzoli, Hollywood, for appellant.
Lucinda Hofmann and Cathy A. Williams of Holland & Knight, LLP, Fort Lauderdale, for appellee.
EN BANC[1]
FARMER, C.J.
In this action for support unconnected with dissolution of marriage and for partition of real property, an agreed order allowed the sale of the marital home. Because of his prior refusals to pay support, the court also awarded her as lump sum alimony a share of his proceeds from the sale of the home. On appeal, he argues that the trial court erred in awarding lump sum alimony. We affirm and, in so doing, recede from recent precedent, explaining why the supreme court decision on which our recent precedent was founded is itself no longer viable.
*1049 The parties are Romanian nationals who married there in 1978. He practiced medicine; she did not work outside the home. They left Romania in 1994 and entered the United States. He was admitted under a work visa to study for a religious degree, which was awarded in 1996. He is now employed as the pastor of a church. She had a spouse's visa that did not permit her to work. Three years ago, her visa was changed to allow her to study nursing but she still cannot work. She has never worked outside the home in the entire 25-year marriage and is barred by federal law from working now.
In 2000, she filed a petition for an injunction, alleging domestic violence. Meanwhile, he was charged with the crime, tried, found guilty, and placed on probation, adjudication withheld. Because she filed the civil action, he refused to support his family and made no mortgage payments after September 2000. He ignored a court order to make mortgage payments.
For reasons based on religion, neither of the parties sought a formal end of their marriage. She filed this action for support unconnected with dissolution of marriage. The court gave her exclusive possession of the marital home but their mortgage was in default. The mortgagee initiated foreclosure proceedings. She had to borrow more than $6,000 to bring the mortgage current. They agreed to a partition and sale to salvage their equity in the home. It was ultimately sold, with the proceeds awaiting disposition by the court.
In a final order, the court awarded her $300 per month in permanent periodic alimony, as well as $600 per month in child support. Because of his history of refusing to support his family, the court awarded her his share of the proceeds from the sale of the home, calling it lump sum alimony, in order to secure payment of the periodic support. This is the order we now review.
He relies on our decision in Hasslacher v. Hasslacher, 650 So.2d 166 (Fla. 4th DCA 1995), to attack the lump sum award. Hasslacher held that the supreme court's four-decades-old decision in Bredin v. Bredin, 89 So.2d 353, 356 (Fla.1956), controlled the issue. Bredin had held that lump sum alimony was not available in proceedings for support unconnected with divorce. Hasslacher held that in proceedings for alimony unconnected with dissolution of marriage Bredin bars the court from awarding any lump sum alimony. The question is whether Bredin states current law.
In 1956 when Bredin was decided, alimony was payable only by husbands "primarily to provide food, clothing, habitation and other necessaries for the support of the wife." [e.s.] 89 So.2d at 355. Until 1947, all alimony in divorce had to be paid in periodic installments, as there was no authority for lump sum awards. 89 So.2d at 355. While Bredin noted some equitable, judge-made authority for separate maintenance unconnected with divorce, the cases "clearly" required only periodic payments and did not allow lump sum alimony to a wife who did not ask for a divorce. 89 So.2d at 355.
In discussing the statute then existing, Bredin noted that while the 1955 text provided for alimony unconnected with divorce, it did not specify whether such alimony could be a lump sum.[2] From this *1050 omission, the court concluded that only periodic alimony was statutorily authorized in proceedings in which divorce was not sought. Bredin explained:
"While a divorce decree brings about a termination and final disposition of the marriage relationship, a separate maintenance decree recognizes the continuation of the marriage relationship, the continuing right of the wife to participate in her husband's estate on his death, as well as the possibility of a reconciliation that will end the necessity for the separate maintenance award.
"[W]e are of the view that the better holding is that in a separate maintenance proceeding the courts deal only with the incomes of the parties and should not divest either of the corpus of his estate. While it remains the duty of the husband to provide for the wife in a fashion consistent with her need and his financial ability, taking into consideration the station in life which the parties occupy, there appears to be no justification in a separate maintenance proceeding unconnected with divorce to divide up the husband's assets and deliver a portion of them in bulk to the wife while simultaneously continuing the marriage relationship and leaving vested in her all of her rights as a wife in the husband's remaining assets." [e.s.]
89 So.2d at 356.
The lump sum alimony awarded in Bredin was $200,000an enormous sum fifty years ago. In fact the husband challenged it as "exorbitant" but the court found it unnecessary to decide whether the amount was more than the law allowed because of its conclusion that lump sum was unavailable. The extent to which the size of the award affected the conclusion that lump sum was unavailable is impossible to know, but it is difficult to escape the suspicion that it played a role.
All decisional precedent must be understood within its historical context. One aspect of Bredinapart from changes in the statutory text we shall presently elucidateshould signal doubts about any lasting validity. Marriages in Florida are no longer terminated by divorce. Today we deal with dissolution of marriage rather than divorce. Divorce was a fault based system for ending marriages. To prevail in a divorce, the wife had to show misconduct, or fault, by the husband. Outcomes in that fault based system were undoubtedly influenced by this essential factthat someone was at fault, or responsible, for ending the marriage.
Bredin gave no thought to a much different application of that term that might be used today. Fifty years ago in a divorce, property rights were usually decided solely on who held title. Valentine v. Valentine, 45 So.2d 885 (Fla.1950) (holding that once marriage was ended by divorce and the proportionate share of each in the estate was fixed, appellant and appellee became tenants in common, and thereafter it was for them to determine whether the property should be partitioned or whether one should purchase the interest of the other). Jointly held property was divided between the parties, while property held in separate names was left untouched. Reid v. Reid, 68 So.2d 821 (Fla.1954). Moreover, when Bredin spoke in 1956 of lump sum alimony it was really concerned with property rights. Bredin held that the result of the trial court's decision would have been to transfer part of the husband's separate estate to his wife even though the parties *1051 were not divorcing and the marriage relationship would continue. The court reasoned:
"there appears to be no justification in a separate maintenance proceeding unconnected with divorce to divide up the husband's assets and deliver a portion of them in bulk to the wife while simultaneously continuing the marriage relationship and leaving vested in her all of her rights as a wife in the husband's remaining assets."
89 So.2d at 355.
The anachronistic nature of the Bredin opinion is quite evident in its fear of a wife being vested with "all of her rights as a wife" in her "husband's remaining assets." How much these "gender-role" perceptions affected the essential holding in Bredin is unknowable, but surely they played a part.
Today the statute does not speak of husbands or wives, only of spouses. Alimony is no longer limited to wives, and adultery is no longer a bar to entitlement. Hasslacher failed to consider the historical context of precedent on which it relied. Bredin was based on the former statutory law of divorce, and the Legislature had since abandoned the entire construct of divorce. In its place the Legislature has adopted no-fault dissolution of marriage in this state. Unlike divorce, no-fault dissolution does not focus on the conduct of the parties that led their marriage to fail.
Apart from these changes in the legal landscape, it is apparent that Hasslacher also failed to consider whether the term lump sum alimony meant the same thing today as it meant to the Bredin court. Bredin's holding in 1956 was then the prevalent understanding of the use of lump sum alimony. It is, however, certainly not what the trial court had in mind in the present case or the only meaning that might be employed today.
The particular usage of lump sum alimony employed in the present caseas security for the payment of supportwas not to adjudicate property rights at all.[3] Lump sum alimony was intended to secure the payment of support by a spouse/parent with a history of refusing to pay such support. There is no hint in Bredin in 1956 that the meaning of lump sum alimony used by the trial judge in this case was ever considered.
We also note that the 1955 text of what is now section 61.09 was changed in 1965 in a significant respect. Whereas the 1955 text had stated that "the court shall have power to grant such temporary and permanent alimony...as the circumstances of the parties may render just," in 1965 the Legislature changed that formulation to:
"the court shall have power to grant such temporary and permanent alimony, support, suit money...as the circumstances of the parties may render just, and to make such other orders as may be necessary to secure to her such maintenance or contribution...."
Although dissolution of marriage replaced divorce in 1971,[4] the 1965 text of section 61.09 remained unchanged until 1986, when the text was again reformulated to its current version: "the court shall enter such order as it deems just and proper." If anything in the current statute excludes lump sum alimony in cases where dissolution *1052 is not being sought, it would have to be found in those words or in the absence of different words.[5] But as we shall show, recent supreme court precedent makes clear that in the absence of statutory rules, chapter 61 should not be read as a basis to apply judge-made rules defeating the Chapter's utility in requiring spouses to support their families. In this regard, chapter 61 should be construed to bestow discretion on trial judges to fashion equitable decisions designed to achieve that end.
The focal point under the dissolution of marriage statute is to make provision for the support of children and a needy spouse while also equitably dividing marital property.[6] A division of marital property does not necessarily turn on how title is held. Issues of alimony turn less on the form and more on the peculiar need of the requesting spouse and the ability of the other spouse to pay it, all within the recognized processes of traditional equity jurisprudence.
If we were to limit our consideration of the matter of securing payment of support solely to the body of property law, we would recognize the rule that ordinarily one co-tenant may recover only the other co-tenant's share of mortgage payments she has actually advanced. See, e.g., Power v. Power, 387 So.2d 546 (Fla. 5th DCA 1980); Rubino v. Rubino, 372 So.2d 539 (Fla. 1st DCA 1979). And it is true that this property law rule is sometimes used in family law cases, as where one parent is granted primary residential custody of minor children. In family law, however, issues of support are rarely governed solely by the rules of property law. Where the issue comprehends more than mere compensation of a co-tenant for advancing funds to save the parties' joint interest in property, where the court is also fashioning security for support of a spouse and children, however, the one-half limitation of the property law reimbursement rule may be inequitable and thus inadvisable in a proceeding under chapter 61.
We emphasize that the granting of equitable relief is rarely mechanical and is usually subject to principles and standards. Equitable discretion is not unlimited or open-ended, a wooden application of ancient maxims. Equity is often under the influence of legal rules. See Schwartz v. Zaconick, 68 So.2d 173, 175 (Fla.1953) ("Equity, although not as inflexible as the law, is nevertheless administered within established limits and upon recognized principles."); August Tobler, Inc. v. Goolsby, 67 So.2d 537, 539 (Fla.1953) ("the equities here are equal and ... consequently the maxim `Equity follows the law' is applicable."); Boley v. Daniel, 72 Fla. 121, 72 So. 644 (1916) (equity will not apply doctrine of equitable subrogation where it would deprive party of legal right). In cases arising under chapter 61, however, on many issues the Legislature has chosen to delegate specific discretion to trial judges to fashion an outcome tailored to the facts and circumstances of each case, largely eschewing thereby the use of inflexible rules. This is especially true with regard to matters of support of minor children and needy spouses, the subject of this use of lump sum alimony we confront in today's case.
Whatever may have been the understanding of relations between married *1053 people and their "roles" in 1956 when Bredin was decided, in this the first decade of the 21st century these perceptions are not the same. Proceedings under chapter 61 are now recognized as primarily equitable in nature. When specific statutory rules are lacking, chapter 61 reposes discretion in the trial court to achieve the purposes and aims of the statutes. In the words of the supreme court:
"proceedings under chapter 61 are in equity and governed by basic rules of fairness as opposed to the strict rule of law. The legislature has given trial judges wide leeway to work equity in chapter 61 proceedings. See, e.g., § 61.001, Fla. Stat. (1995). Thus, section 61.16 should be liberallynot restrictivelyconstrued to allow consideration of any factor necessary to provide justice and ensure equity between the parties." [c.o.]
Rosen v. Rosen, 696 So.2d 697, 700 (Fla. 1997); see also Canakaris v. Canakaris, 382 So.2d 1197, 1201 (Fla.1980) ("In granting lump sum alimony, the trial court should be guided by all relevant circumstances to ensure `equity and justice between the parties.'").[7]
Rosen teaches that in fashioning an equitable remedy, a legal rule should not unreasonably restrain a trial court unless the statute makes such a rule applicable. Alimony unconnected with dissolution of marriage is a proceeding under chapter 61. § 61.09, Fla. Stat. (2001). In cases where support is sought without dissolution of marriage, the statute does not prohibit this use of lump sum alimony but instead allows the court to tailor the remedy to the facts and circumstances. See § 61.09 ("the court shall enter an order as it deems just and proper."); see also § 61.08(2) ("[In awarding alimony generally] [t]he court may consider any other factor necessary to do equity and justice between the parties.").
Both Bredin and Hasslacher seem to proceed on the basis that in a case eschewing dissolution, the issue is governed by a legal ruleunder no circumstances may lump sum alimony be utilized unless dissolution is also sought. That is contrary to the current statute. The facts of this case offer a strong justification for employing the equitable tool of lump sum alimony to secure payment of support. He has a history of refusing to support his family. The circumstances of the family are such that any refusal of support threatens to have severe consequences. To follow Bredin would be to construe chapter 61 restrictively, rather than "liberally to allow consideration of any factor necessary to ensure equity between the parties." It would be, in short, to set aside the more recent expressions of the highest court as to the meaning of chapter 61 text in favor of a half-century old understanding of the former divorce law. That would also perpetuate an understanding of societal roles quite at odds with current perceptions of relations between the sexes and the duties and obligations of marital parties.
We think Hasslacher was wrongly decided and does not state a current understanding of the statute in question. We also conclude that the holding in Bredin was made inapplicable by the abandonment of the system of divorce in favor of dissolution of marriage and the changes in the statutory text we have described or to which we have alluded. We therefore recede from Hasslacher.
*1054 If we are wrong in this, our decision today will be in conflict with Bredin, and the supreme court will have jurisdiction to point us in the right direction. If we are correct, however, further review will be unwarranted and these parties will be spared the time and unnecessary diminution of their limited assets such additional review would entail.
On the basis of the foregoing, we affirm the final order.
GUNTHER, STONE, WARNER, POLEN, KLEIN, STEVENSON, SHAHOOD, GROSS, TAYLOR and MAY, JJ., concur.
HAZOURI, J., recused.
NOTES
[1] We have taken up the case as a full court to address whether a prior decision from this court correctly states the rule of decision as to the issue on appeal.
[2] The statute considered by Bredin in 1956 provided as follows:

"If any of the causes of divorce set forth in § 65.04 shall exist in favor of the wife, and she be living apart from her husband, she may obtain alimony without seeking a divorce upon bill filed and suit prosecuted as in other chancery causes; and the court shall have power to grant such temporary and permanent alimony and suit money as the circumstances of the parties may render just; but no alimony shall be granted to an adulterous wife." [e.s.]
§ 61.09, Fla. Stat. (1955).
[3] Because this case involves no claim to adjudicate property rights with lump sum alimony in a proceeding for support unconnected with dissolution, we have no occasion to consider whether Bredin's essential holding about property rights is still valid. Whether there are circumstances in which some kind of property division might be permitted in this kind of case we leave for another day in which the issue is directly raised.
[4] See Ch. 71-241, Laws of Fla.
[5] The supreme court has thereafter never been called upon to decide specifically whether this current text discards the Bredin holding and authorizes lump sum alimony in proceedings where a termination of the marriage is not being sought.
[6] In fact, equitable division of marital property did not become the law of this state until the supreme court adopted it in Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980).
[7] The panel in Hasslacher did not have the benefit of Rosen, which was decided afterwards.