696 So.2d 697 (1997)
Eileen ROSEN, Petitioner,
v.
Gene ROSEN, Respondent.
No. 86649.
Supreme Court of Florida.
April 24, 1997.
Rehearing Denied July 1, 1997.
*698 Joe N. Unger of Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, P.A., Miami, and Lawrence A. France, P.A., North Miami Beach, for Petitioner.
Donald G. Criscuolo of Genet & Criscuolo, P.A., North Miami Beach, and Nancy W. Gregoire of Bunnell, Woulfe, Kirschbaum, Keller & McIntyre, P.A., Fort Lauderdale, for Respondent.
PER CURIAM.
We have for review Rosen v. Rosen, 659 So.2d 368 (Fla. 3d DCA 1995)(Rosen VI), in which the district court used a "results obtained" standard to reverse an award of attorney's fees in this proceeding under chapter 61, Florida Statutes (1995), and converted the alimony award from permanent to rehabilitative. We have jurisdiction based on express and direct conflict with Ryan v. Ryan, 664 So.2d 994 (Fla. 4th DCA 1995); Brock v. Brock, 654 So.2d 163 (Fla. 1st DCA 1995), Fabre v. Levine, 618 So.2d 317 (Fla. 1st DCA), review denied, 629 So.2d 132 (Fla. 1993); Allen v. Heinrich, 623 So.2d 540 (Fla. 2d DCA 1993), and other cases holding that a trial court cannot use a "results obtained" or "prevailing party" standard in awarding attorney's fees in family law cases. Art. V, § 3(b)(3), Fla.Const. For the reasons expressed, we approve in part and quash in part the district court's decision and find that: (1) while need and ability to pay are the primary elements to be considered when deciding entitlement to attorney's fees in chapter 61 proceedings, they are not exclusive; a trial court may consider all the circumstances surrounding the suit; (2) absent a marital settlement agreement to the contrary, a trial court may consider the current employability of a party in a modification of alimony proceeding to determine whether a change from permanent to rehabilitative alimony is appropriate, even if the party's employability was considered in initially awarding alimony; and (3) under the circumstances of this case, the district court erred in reversing the trial court's decision to deny Mr. Rosen's request to alter the alimony from permanent to rehabilitative.
The facts of this case are as follows. Gene and Eileen Rosen were married for nine years, during which time they had two children. The marriage was dissolved in 1979, and the parties have engaged in continuous litigation since that time.[1] In 1991, Ms. Rosen filed a petition seeking an award of attorney's fees and costs, an increase in alimony and child support, reimbursement for payment of a psychologist's bill, and other relief, including interest on the arrearage. In turn, Mr. Rosen sought a reduction in alimony, a reduction in child support, and a change in the alimony from permanent to rehabilitative. At issue in this proceeding are (1) Ms. Rosen's request for attorney's fees, which the *699 trial court granted, and (2) Mr. Rosen's request to change the previously awarded alimony from permanent to rehabilitative, which the trial court denied.
On appeal, the district court reversed the attorney's fee award, stating that it "should be reconsidered in light of the reversal of many of the benefits originally received by [Ms. Rosen]." Rosen, 659 So.2d at 370. The district court also reversed the trial court's denial of Mr. Rosen's request to change the permanent alimony to rehabilitative.
As indicated above, we accepted review of this case on the attorney's fees issue based on direct conflict with a number of cases providing that a trial court cannot apply a prevailing party or results obtained standard in determining whether or not to award fees in family law cases.

ATTORNEY'S FEES
Any determination regarding an appropriate award of attorney's fees in proceedings for dissolution of marriage, support, or child custody begins with section 61.16, Florida Statutes (1995), which provides in pertinent part:
(1) The court may from time to time, after considering the financial resources of both parties, order a party to pay a reasonable amount for attorney's fees, suit money, and the cost to the other party of maintaining or defending any proceeding under this chapter, including enforcement and modification proceedings and appeals.... In determining whether to make attorney's fees and costs awards at the appellate level, the court shall primarily consider the relative financial resources of the parties, unless an appellate party's cause is deemed to be frivolous.
The purpose of this section is to ensure that both parties will have a similar ability to obtain competent legal counsel. Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980). We reaffirm the importance of that purpose today. As we stated in Standard Guaranty Insurance Co. v. Quanstrom, 555 So.2d 828, 835 (Fla.1990), in which we discussed section 61.16:
Our case law implementing this statute requires a judge to consider the needs of the party seeking a fee and the financial resources of the parties to assure that both parties receive adequate representation. A significant purpose of this fee-authorizing statute is to assure that one party is not limited in the type of representation he or she would receive because that party's financial position is so inferior to that of the other party.
In Canakaris, we noted that it is not necessary that one spouse be completely unable to pay attorney's fees for the trial court to require the other spouse to pay those fees. In other words, to ensure that both parties have similar access to competent legal counsel, the trial court must look to each spouse's need for suit money versus each spouse's respective ability to pay.
In Quanstrom, we reevaluated the lodestar method for determining appropriate attorney's fee awards in litigation generally. Essentially, under the lodestar approach, a court multiplies the number of hours reasonably expended by a reasonable hourly rate. This produces the "lodestar," which is the objective basis for the award of attorney's fees. Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145, 1151 (Fla.1985). Once the lodestar figure is calculated, a court adds to or subtracts from that figure based on the contingency risk factor and the results obtained. In reexamining the lodestar approach in Quanstrom, we emphasized that different categories of cases may require different criteria to achieve the legislative or court objectives in authorizing a reasonable attorney's fee. Specifically, we stated that attorney's fees in chapter 61 proceedings are governed by section 61.16. We further stated that, although the basic lodestar method might be an appropriate starting point for computing a reasonable fee, a contingency fee multiplier is not applicable in such cases. In sum, arriving at the "lodestar" (reasonable hours times a reasonable hourly rate) may be an appropriate starting point for setting a reasonable attorney's fee in domestic relations cases, but entitlement to such a fee must take into consideration all the circumstances surrounding the litigation, including but not limited to the needs of the spouse *700 seeking the fee in light of the financial resources of the parties.
A review of district court opinions reflects significant distinctions in the calculation of attorney's fees under section 61.16.[2] For instance, many opinions reflect that results obtained and/or the prevailing party factors, which are employed after the basic "lodestar" is calculated, are inapplicable in family law cases. White v. White, 683 So.2d 510 (Fla. 4th DCA 1996) (basis for fees under law governing this issue has little if anything to do with prevailing party); Brock (an award of fees is not dependent on a party's success in family law litigation); Allen (award depends not on who wins, but rather on the relative financial circumstances of the parties); Fabre (same); Chertoff v. Chertoff, 553 So.2d 179 (Fla. 3d DCA 1989) (award of attorney's fees in matrimonial action is not governed by a prevailing party standard); Hudgens v. Hudgens, 411 So.2d 354 (Fla. 2d DCA 1982). Other cases conclude that the results obtained are to be considered in calculating an appropriate attorney's fee. Rosen VI; Peacon v. Peacon, 578 So.2d 781 (Fla. 3d DCA)(trial court must reconsider the amount of a reasonable fee in light of the substantial alteration of the results obtained), review denied, 589 So.2d 292 (Fla.1991); Margulies v. Margulies, 506 So.2d 1093 (Fla. 3d DCA 1987)(adoption of the lodestar formula reconfirmed that the results obtained is still a factor to be considered in awarding fees); Adler v. Adler, 418 So.2d 1007 (Fla. 3d DCA 1982)(amount of fees not excessive in light of results achieved and the respective financial circumstances of the parties); Meltzer v. Meltzer, 400 So.2d 32 (Fla. 3d DCA 1981)(same); Adams v. Adams, 376 So.2d 1204 (Fla. 3d DCA 1979)(amount of award is consistent with the evidence as to the hours and effort expended, the results achieved, and the quality of the services rendered), cert. denied, 388 So.2d 1109 (Fla.1980). Still other cases apparently conclude that the results obtained and/or prevailing party factors are to be used in some instances but not in others. Robbie v. Robbie, 591 So.2d 1006 (Fla. 4th DCA 1991)(lodestar method may be useful method in considering a final allowance of fees but does not apply to temporary awards because many of the Rowe factors, such as who is the prevailing party, are not known); Davis v. Davis, 584 So.2d 1117 (Fla. 1st DCA 1991)(prevailing party is not always dispositive).
We resolve this conflict by pointing out that proceedings under chapter 61 are in equity and governed by basic rules of fairness as opposed to the strict rule of law. See § 61.011, Fla.Stat. (1995) ("Proceedings under this chapter are in chancery."). The legislature has given trial judges wide leeway to work equity in chapter 61 proceedings. See, e.g., § 61.001, Fla.Stat. (1995). Thus, section 61.16 should be liberallynot restrictivelyconstrued to allow consideration of any factor necessary to provide justice and ensure equity between the parties.
Section 61.16 constitutes a broad grant of discretion, the operative phrase being "from time to time." The provision simply says that a trial court may from time to time, i.e., depending on the circumstances surrounding each particular case, award a reasonable attorney's fee after considering the financial resources of both parties. Under this scheme, the financial resources of the parties are the primary factor to be considered. However, other relevant circumstances to be considered include factors such as the scope and history of the litigation; the duration of the litigation; the merits of the respective positions; whether the litigation is brought or maintained primarily to harass (or whether a defense is raised mainly to frustrate or stall); and the existence and course of prior or pending litigation. Had the legislature intended to limit consideration to the financial resources of the parties, the legislature easily could have said so.[3]
*701 Consistent with our opinion in Quanstrom, we find that section 61.16 governs the standard to be applied in determining an award of attorney's fees in dissolution of marriage, support, and child custody cases. The lodestar, which is produced by multiplying the number of hours reasonably expended by a reasonable hourly rate, may be used as a starting point in determining a reasonable attorney's fee. We further find that a court may consider all the circumstances surrounding the suit in awarding fees under section 61.16. Moreover, in situations where a court finds that an action is frivolous or spurious or was brought primarily to harass the adverse party, we find that the trial court has the discretion to deny a request for attorney's fees to the party bringing the suit.

THE ALIMONY ISSUE
In the next issue, Ms. Rosen argues that the district court erroneously converted her alimony from permanent to rehabilitative. As noted previously, this family law proceeding has encompassed numerous appeals since its inception. Initially, the wife was awarded lump sum alimony. The district court reversed the lump sum award, relying on our decision in Canakaris, and found that Ms. Rosen was entitled to permanent periodic alimony. In doing so, the district court noted the following:
Although Mrs. Rosen has teaching experience and a master's degree in elementary education, she has worked very little since the marriage and has devoted almost all of her time to her duties as a homemaker and mother.
Rosen I, 386 So.2d at 1270. On remand, the trial court awarded Ms. Rosen alimony in the amount of $2000 per month, which Mr. Rosen appealed. The district court found the award to be "fully justified both by the record and our prior opinion." Rosen II, 426 So.2d at 1053. In subsequent litigation, the trial court reduced Ms. Rosen's alimony award from $2000 to $500 per month. In reversing that reduction, the district court stated:
We reverse a judgment that modified a permanent periodic alimony award previously affirmed by this court because the bases for modification ... do not reflect any significant change in circumstance from the time of entry of the original award. Specifically, the wife's employability was known at the time of the previous award and, thus, could not be considered.

Rosen IV, 528 So.2d at 42 (emphasis added) (citations omitted). In 1991, Ms. Rosen petitioned the trial court to enforce the district court's mandate in Rosen IV. She also sought an increase in child support and alimony; Mr. Rosen sought a decrease in child support and alimony and a change in the type of alimony. The trial court made the following findings pertinent to this issue: (1) that Ms. Rosen is dependent and the need to maintain her children and the home they share interferes with gainful employment outside the home at this time; (2) that she is "definitely in need of alimony"; (3) that there has been "a substantial change in circumstances as to the financial condition of [Ms. Rosen]"; and (4) that there is no finding that [Ms. Rosen] is underemployed or unemployed and the evidence is that she has chosen to stay at home and work in the home. Based on these findings, the trial judge ordered that Ms. Rosen's alimony be increased from $2000 per month to $2750 per month. Child support was also increased. The judge denied the husband's request for a reduction in child support and alimony. The trial judge also granted in part and denied in part other relief requested by the parties. It is this last order that is the subject of the most recent appeal and our review here. The district court affirmed the increase in alimony from $2000 to $2750 per month and the increase in child support. In doing so, however, the district court also converted the alimony from permanent to rehabilitative, stating:
The former wife has a master's degree in education, the children will both be in college by the fall of 1995, and there is no justifiable reason why the former wife should not enter the work force. We find *702 error in the award of permanent alimony rather than rehabilitative under the reasoning and dictates found in Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980); Rojas v. Rojas, 656 So.2d 563 (Fla. 3d DCA 1995); Siegel v. Siegel, 564 So.2d 226 (Fla. 5th DCA 1990); Contogeorgos v. Contogeorgos, 482 So.2d 590 (Fla. 4th DCA 1986); Perry v. Perry, 448 So.2d 588 (Fla. 5th DCA 1984); Campbell v. Campbell, 432 So.2d 666 (Fla. 5th DCA 1983); James v. James, 443 So.2d 1029 (Fla. 5th DCA 1983); Crees v. Crees, 342 So.2d 1014 (Fla. 4th DCA 1977); Reback v. Reback, 296 So.2d 541 (Fla. 3d DCA 1974). We therefore convert the permanent alimony to rehabilitative alimony....
Rosen VI, 659 So.2d at 369. The decisions cited by the district court stand for the general proposition that it is an abuse of discretion to award permanent rather than rehabilitative alimony when a spouse has a clear ability to become financially independent at some point in the future.
Ms. Rosen contends that the district court was without authority to modify the alimony award given that her employability was contemplated and considered at the time of the original award. She asserts that the trial court made specific findings that she continues to be dependent and in need of alimony, and she argues that the district court itself in Rosen IV reversed a previous decrease in alimony because Ms. Rosen's "employability was known at the time of the previous award and, thus, could not be considered" in determining whether alimony should be altered. 528 So.2d at 43. She relies on a number of district court decisions in support of this argument. See, e.g., Long v. Long, 622 So.2d 622 (Fla. 2d DCA 1993); Allison v. Allison, 554 So.2d 1196 (Fla. 1st DCA 1989); Gray v. Lauscher, 537 So.2d 708 (Fla. 5th DCA 1989); Bashaw v. Bashaw, 412 So.2d 433 (Fla. 4th DCA 1982); Jaffee v. Jaffee, 394 So.2d 443 (Fla. 3d DCA 1981).
The issue presented is whether, as a principle of law, a trial judge has the authority to alter alimony from permanent to rehabilitative based, in part, on the same employability evidence that was presented in the initial dissolution proceeding, together with other changed circumstances. The district court's decision in Rosen IV does appear to prohibit the trial court from reconsidering employability status under the circumstances of this case. The other cases cited by Ms. Rosen, however, simply stand for the general proposition that circumstances that were contemplated by the final judgment or specifically agreed to by the parties may not be considered as a change in circumstances in subsequent modification proceedings. For example, in Jaffee, the parties entered into a marital settlement agreement in which they specifically agreed that the wife would receive permanent periodic alimony. In Bashaw, a change in alimony was sought based on financial considerations that were specifically reviewed by the trial judge at the time of the initial award. The other cases cited by Ms. Rosen are equally distinguishable.
We reject Ms. Rosen's position and the district court's statement in Rosen IV that employability status or the effect of having to stay at home to care for the parties' children cannot be considered years later as a factor in a subsequent modification proceeding. Employability at the time of an initial alimony proceeding and employability years later can be vastly different, even when a party's educational background or job skills remain the same. Numerous circumstances can change the employability of the alimony recipient. Moreover, such changes can work both for and against an alimony recipient. It is important that trial judges be allowed to consider all relevant factors in making the types of decisions at issue. To hold otherwise would result in unjust decisions. As the findings in this case reflect, the demands of supervising and maintaining a home for minor children may justify a higher alimony award because the trial court has determined that it is in the parties' best interests for one spouse to work within the home. Once the minor children have left the home, the justification for the initial alimony award may change. On the other hand, the employability of a party who has remained at home for many years may be diminished given the increased age of the party and the changing job market, even when the party possesses or may seek to possess an outstanding educational *703 background or significant job skills. We made it clear in Canakaris that trial judges have the discretion to convert permanent alimony to rehabilitative alimony or to convert rehabilitative alimony to permanent alimony, depending on the circumstances presented. The point of our findings in Canakaris was that an award of alimony is to provide the current necessary support. In the instant case, at the time the trial court heard the alimony issue, the minor children were still at home. By the time this case reached the district court, however, the district court concluded that the children would be in college by 1995 and that Ms. Rosen should attempt to renew her qualifications to seek employment. We find that the factors considered by the district court would have been appropriate factors for the trial court to consider as of the date the district court rendered its opinion. We conclude, however, that the district court erred in making such factual determinations in light of the record before us and the specific findings of the trial court that Ms. Rosen was "definitely in need of alimony" and that the parties' children were still at home at the time the trial court considered the alimony award at issue. Under these circumstances, we find that the district court should have affirmed the trial court on this point without prejudice to the husband to reapply for an alteration in the alimony award.
Accordingly, we approve the district court's decision concerning the attorney's fee award and quash its decision concerning permanent and rehabilitative alimony. We approve Robbie, Davis, Peacon, Margulies, Adler, Meltzer, and Adams to the extent they are consistent with our findings regarding the attorney's fee issue; we disapprove the district court decisions noted above that are inconsistent. We disapprove Rosen IV to the extent it prohibited the reconsideration of Ms. Rosen's employability status in subsequent modification proceedings. We direct that the district court remand this case to the trial court for reconsideration under the principles articulated in this opinion.
It is so ordered.
KOGAN, C.J., and HARDING, WELLS and ANSTEAD, JJ., concur.
OVERTON, J., concurs in part and dissents in part with an opinion, in which GRIMES, J., concurs.
SHAW, J., recused.
OVERTON, Justice, concurring in part and dissenting in part.
The majority opinion will, in my view, substantially change the dynamics of family law proceedings and limit or deny access to the courts to parties in need. This decision can also result in more funds being paid for attorney's fees from family resources. This change is unnecessary and I emphatically dissent to that part of the majority's opinion which holds that the results obtained or prevailing party standard may be used as a factor in determining entitlement to attorney's fees in chapter 61 proceedings.
I do agree and concur that we should disapprove Rosen IV to the extent that it prohibited the reconsideration of Ms. Rosen's employability status in subsequent modification proceedings and concur with that part of the majority opinion. I dissent, however, from that part of the majority opinion that expressly approves those opinions holding that the results obtained or prevailing party standard may be used as a factor to be considered in setting attorney's fees and holds that the merits of the respective positions may be considered in setting attorney's fees. There is no question in my mind that, under this new principle, a party who has limited family resources will have a difficult time obtaining counsel for tough custody, support, or modification cases. This is because attorneys will not want to assume the risk of receiving less than a reasonable fee for representing an individual in a tough but legitimately justiciable issue.
In my view, this case is a major step backward in this Court's prior strong efforts to put both parties in family law proceedings on an equal footing. This holding of the majority has effectively overruled numerous cases from this and other courts holding that attorney's fees under section 61.16 are to be awarded based on each respective spouse's *704 ability to pay rather than on who wins or loses. As we stated in Nichols v. Nichols, 519 So.2d 620, 621 (Fla.1988):
[T]he equitable considerations underlying our dissolution law compel the trial court to mitigate the harm an impecunious spouse would suffer where the other spouse's financial advantage accords him or her an unfair ability to obtain legal assistance.
... Where one spouse effectively is unable to pay for legal counsel and the other suffers no similar disability, the very purposes of Florida's dissolution statute are jeopardized and the trial court risks inequity.
(Citation omitted.) See also Quanstrom, 555 So.2d at 835 ("Our case law implementing this statute requires a judge to consider the needs of the party seeking a fee and the financial resources of the parties to assure that both parties receive adequate representation."); Canakaris v. Canakaris, 382 So.2d 1197, 1205 (Fla.1980)(purpose of section 61.16 is "to ensure that both parties will have similar ability to secure competent legal counsel"); Cummings v. Cummings, 330 So.2d 134, 136 (Fla.1976)(quoting with approval Mertz v. Mertz, 287 So.2d 691, 692-93 (Fla. 2d DCA 1973))("[T]he purpose of awarding attorney fees under the new dissolution of marriage law has not changed, in our view, from the purposes contemplated by its predecessors; that purpose is to ensure that both parties will have reasonably the same ability to secure competent legal counsel."); White v. White, 683 So.2d 510 (Fla. 4th DCA 1996); Brock v. Brock, 654 So.2d 163 (Fla. 1st DCA 1995); Fabre v. Levine, 618 So.2d 317 (Fla. 1st DCA), review denied, 629 So.2d 132 (Fla.1993); Allen v. Heinrich, 623 So.2d 540 (Fla. 2d DCA 1993); Chertoff v. Chertoff, 553 So.2d 179 (Fla. 3d DCA 1989); Hudgens v. Hudgens, 411 So.2d 354 (Fla. 2d DCA 1982). As these cases reflect, section 61.16 has long been interpreted to require a judge to consider the needs of the party seeking a fee and the financial resources of the parties in determining entitlement to attorney's fees to ensure that both parties receive adequate representation. In fact, section 61.16 by itself makes this point clear by stating, in pertinent part:
The court may from time to time, after considering the financial resources of both parties, order a party to pay a reasonable amount for attorney's fees ... to the other party.... In determining whether to make attorney's fees and costs awards at the appellate level, the court shall primarily consider the relative financial resources of the parties, unless an appellate party's cause is deemed to be frivolous.
§ 61.16(1), Fla.Stat. (1995)(emphasis added). I suggest that today's ruling will significantly undermine the principles we set forth in our prior cases implementing this statute. It will also severely restrict the ability of a spouse with limited financial resources to obtain competent representation because many lawyers will not want to take tough cases without any guarantee of payment. Thus, spouses with limited financial resources will either have no representation or will be required to prepay for legal representation by sacrificing funds that were to be used for necessary family expenses; or an attorney representing a spouse in these circumstances will seek and be entitled to a contingency multiplier because of the risk of receiving a reduced or no fee. If the contingency multiplier is allowed, then this in turn will result in larger attorney's fees that must come from the total family resources and, consequently, reduce the amount available to the parties and their children. This is a bad public policy decision. At a time when we are concerned about the substantial increase in pro se representation in the family law field, this decision will only increase the number of family law litigants who find they must represent themselves.
Through its ruling today, the majority has effectively made section 61.16 a prevailing party statute. I suggest that the prevailing party standard will in fact be the dominant and deciding factor in most attorney's fee awards.
I am sympathetic to the assertion that the use of a results obtained or prevailing party standard will halt the problems caused by the continued relitigation of decided issues and the harassment caused by the assertion of unjustified issues. There are, however, less detrimental methods of resolving these *705 problems. For instance, if the court finds that an action or defense has been brought or defended without justification, that a party is seeking to have a previously resolved issue retried, or that an action is frivolous or spurious or was brought or defended primarily to harass the adverse party, a trial judge has the discretion to deny a request for attorney's fees to the party bringing or defending the suit and should be encouraged to do so when the circumstances justify it.
The question should not be who won or lost; the question should be whether the issue presented was truly justiciable. Many issues in custody, support, visitation, and modification disputes are legitimately justiciable on both sides. Today's holding will substantially limit the ability of many spouses to bring such claims because of the lack of resources. For these reasons, I dissent from the majority's holding on this issue.
GRIMES, J., concurs.
NOTES
[1] See Rosen v. Rosen, 576 So.2d 308 (Fla. 3d DCA 1990)(Rosen V); Rosen v. Rosen, 528 So.2d 42 (Fla. 3d DCA) ( Rosen IV), review denied, 537 So.2d 569 (Fla.1988); Rosen v. Rosen, 478 So.2d 459 (Fla. 3d DCA 1985)(Rosen III); Rosen v. Rosen, 426 So.2d 1052 (Fla. 3d DCA 1983)( Rosen II); Rosen v. Rosen, 386 So.2d 1268 (Fla. 3d DCA 1980)(Rosen I), review denied, 392 So.2d 1378 (Fla.1981).
[2] Notably, a significant number of the cases awarding fees in family law cases were issued before our decision in Quanstrom.
[3] In reaching our decision today, we note that the legislature amended section 61.16, effective July 1, 1996, to specifically provide in pertinent part that:

In those cases in which an action is brought for enforcement and the court finds that the noncompliant party is without justification in the refusal to follow a court order, the court may not award attorney's fees, suit money, and costs to the noncompliant party.
§ 61.16, Fla.Stat. (Supp.1996)