SORONDO, Judge.
Betty Brody appeals the trial court’s denial of her motion for attorney’s fees and court costs in this post-dissolution proceeding.
Dr. Stephen R. Poliakoff was divorced from his former wife, Betty Brody, in 1990. At that time, as pertinent to this proceeding, the trial court ordered him to pay the sum of $12,000 per month in alimony for a period of fifteen years, and $1,200 for support for his minor daughter.
In 1992 Dr. Poliakoff, unilaterally, reduced his alimony payments from $12,000 to $1,200 per month. In July of 1992 the former wife filed an Emergency Motion for Contempt for failure to pay alimony and child support. In October of 1992, Dr. Poliakoff filed a Petition for Modification of Alimony and Child Support which sought to decrease both his monthly child support and alimony obligations. In response thereto the former wife filed an Amended Counterpetition for Modification and Enforcement seeking to increase monthly child support and alimony.
In an order dated November 8, 1994, the trial judge found Dr. Poliakoff to be $226,-339.57 in arrears on his alimony. The court further found that his personal gross income for 1990 was $767,976[1] and $792,372 in 1993.[2] The court concluded that he was fully capable of paying his support obligations to his former wife and his daughter, and concluded that he was in contempt of court for his “willful failure” to pay his alimony and child support obligations when due.
Subsequent to the conclusion of the proceedings described above, the former wife filed a Motion for Award of Attorneys’ Fees and Court Costs. The successor judge appointed to the case conducted an evidentiary hearing which concluded on September 22, 1995. During this three-day hearing, the undisputed evidence established that Dr. Po-liakoffs medical practice generated a gross income in excess of $1,480,000 in 1994 and a projected income for 1995 of $1,200,000.[3] Dr. Poliakoff testified that because of the debt he has accumulated as a result of this litigation, he has substantially reduced his business overhead by laying off employees, reducing his office space and implementing other cost-cutting measures.
The former wife’s share of the equitable distribution consists of a stock portfolio valued at $1,400,000.[4] Her income from this *935 investment in 1994 was approximately $33,-000. Her total income for that year was $129,229.[5] As of July 1995 the former wife had received $54,048 in alimony and approximately $18,000 in dividends. Her total approximate income through the day of the hearing was $72,000. Presuming that the alimony payments continued at the same rate, and further presuming no dramatic shifts in the stock market, the former wife’s projected gross income for 1995 would be approximately $144,000.[6]
In Rosen v. Rosen, 696 So.2d 697 (Fla. 1997), the Supreme Court articulated the factors to be considered in awarding attorneys’ fees in modification proceedings:
[The] financial resources of the parties are the primary factor to be considered. However, other relevant circumstances to be considered include factors such as the scope and history of the litigation; the duration of the litigation; the merits of the respective positions; whether the litigation is brought or maintained primarily to harass (or whether a defense is raised mainly to frustrate or stall); and the existence and course of prior pending litigation.
Id. at 700. It is clear that the idea of the final judgment was for the former wife to be able to rely on the alimony payments for current income for the fifteen-year period, -without having to invade her share of the equitable distribution. With this in mind, it is clear that Dr. Poliakoffs financial resources, in spite of his debt, are vastly superior to those of his former wife. Additionally, a brief review of the history of this litigation does not help the good doctor’s position. This litigation began because Dr. Poliakoff unilaterally decided to reduce his alimony from the court ordered amount of $12,000 to $1,200 per month. Because of this unlawful act, for which he was held in contempt of court, the former wife was forced to file the motions which were litigated during the three-year period that ended with the order presently under review. The full measure of Dr. Polia-koffs bad faith is clearest in his October 1992 Motion for Modification of Alimony and Child Support which sought a reduction in his child support obligation of $1,200 per month, at a time when his personal yearly gross income was in excess of $750,000! Ultimately, Dr. Poliakoff conceded that the child support could not be decreased and, indeed, needed to be increased. The November 8, 1994 Order modified the child support to $3,837 per month.
We do not believe that there is competent substantial evidence to support the order of the trial court. Accordingly, we reverse and remand with directions to the trial court to award the former wife her reasonable attorneys’ fees and court costs.
Reversed and remanded with instructions.
SCHWARTZ, C.J., concurs.

. Dr. Poliakoff is an expert in the field of gynecology/oncology and practices medicine on his own. The gross income for his practice in 1990 was $1,379,032.

. The gross income for the practice in 1993 was $1,518,749.

. The last day of the hearing was September 22, 1995. As of that date. Dr. Poliakoff testified the gross income for the practice was $826,000.

. As observed by both sides during the hearing, the exact value of the former wife's portfolio varies according to the fluctuations in the stock market. Because of a strong market, this asset increased in value substantially during the three to four years after the divorce.

. Of this income, $57,200 was from alimony.

. Coincidentally, this is the amount the Final Judgment contemplated she would receive from her former husband as alimony, independent of child support and whatever revenue she might receive from her share of the equitable distribution.