932 So.2d 1142 (2006)
Stacia M. HUMERICKHOUSE, n/k/a Stacia M. Kay, Appellant,
v.
Donald L. HUMERICKHOUSE, Appellee.
No. 2D05-3997.
District Court of Appeal of Florida, Second District.
June 16, 2006.
*1143 H. Stephen Hillebrand, Sarasota, for Appellant.
Jeffrey A. King, Sarasota, for Appellee.
CASANUEVA, Judge.
In this appeal from a postdissolution order on child support that denied her attorney's fees, the former wife, Stacia M. Kay, claims the trial court abused its discretion and erred in basing its denial of fees primarily on the actions of her attorney. We agree and reverse.
Ms. Kay and Mr. Humerickhouse were married for five and a half years before they were divorced on December 30, 1991. Two daughters were born of the marriage, and Ms. Kay was granted primary residential custody of them. A prior postdissolution order, entered in June 1994, set Mr. Humerickhouse's child support obligation at $869.96 per month. The parties engaged in several other postdissolution modification proceedings, but they are not germane to this appeal.
On January 18, 2005, Mr. Humerickhouse filed an amended motion to abate, alleging that he had overpaid his court-ordered child support to that date by approximately $9,562.95. He sought to abate his support obligation until the overpayment credit was exhausted. Ms. Kay opposed his motion on various grounds, seeking either to avoid an abatement entirely or spread out the overpayment credit so the children would not be without support completely for what could amount to almost a year. Ms. Kay's current employment provides her only a very modest income. She and her daughters have lived for many years with her longtime boyfriend in his house, and he provides the vehicles the household members use. To assist in maintaining the household, she *1144 turns over the child support to this gentleman, as well as her earnings as a waitress. In 2004, her federal income tax refund and her federal earned income credit tax refund also went into the common household fund.
Soon after Mr. Humerickhouse moved to abate, Ms. Kay filed a supplemental petition for modification of child support, alleging that an increase was needed because Mr. Humerickhouse's income had increased and the children's expenses were much higher than in 1994. Mr. Humerickhouse answered and counterpetitioned for a reduction in his child support, primarily because their oldest daughter had recently turned eighteen and would soon graduate from high school.
An evidentiary hearing was held on Mr. Humerickhouse's amended motion to abate, which resulted in an order finding that he had overpaid his child support obligation by $9,964.47. The trial court ordered a partial abatement of his ongoing child support obligation in the amount of $200 biweekly, rather than cease payments entirely, until the credit was exhausted.
Three days after the above order was entered, Ms. Kay filed an amended supplemental petition for modification of child support, seeking an increase in child support above the guidelines due to increased expenses for the children's medical care and visitation. She also sought her attorney's fees and costs.
At the hearing on the petitions for modification, the evidence showed that Mr. Humerickhouse's net monthly income was more than twice Ms. Kay's. He had substantial assets, including a bank account of approximately $37,000, a retirement portfolio of approximately $196,000, and an annuity account of approximately $2000. In addition, he had at least $4560 in savings and checking accounts and owns his home and a car. In contrast, Ms. Kay has almost no assets and little ability to pay her attorney's fees and costs; her mother paid the attorney's initial retainer fee. There had been some question about the three financial affidavits Ms. Kay had filed during the pendency of the proceedings, none of which matched the others. Ms. Kay explained these discrepancies by saying that she had prepared them without outside aid, even from her attorney, and had had some difficulty in understanding what was required. Although these disparities caused the trial court some concern, they did not detract from the fact that she possessed few assets of any value and earned only a modest salary, especially given that she had experienced some recent medical problems.
Ms. Kay's attorney testified that his hourly rate was $150, adding that this rate had not changed since 1992 and was extremely reasonable. The total time he expended on her case was approximately forty-five hours. Based on the attorney's affidavit with itemized time records, he testified that he was owed $6,622.50 in fees and had expended $534.89 in costs.
The trial court's final order denied Mr. Humerickhouse's petition to decrease his child support obligation, except that it acknowledged that no further support was needed for the eldest after her graduation from high school, and granted Ms. Kay's request for an increase in child support, although the court declined to depart upward from the child support guidelines. The court also denied her request for attorney's fees and costs despite the fact that it acknowledged in the order that Mr. Humerickhouse has a better ability to pay attorney's fees than Ms. Kay does. The court found that she had an ability to pay her fees and costs because she had received 2004 tax refunds that amounted to $5854. The court also noted that her attorney had taken needless actions in the *1145 proceedings, specifically citing: unsuccessfully contesting Mr. Humerickhouse's motion to abate; submitting standard family law interrogatories and requests for production of documents and, following responses and objections, moving to compel mandatory disclosure, which was denied; requesting discovery that was denied upon Mr. Humerickhouse's objection; mailing a good-faith discovery letter required by local court rule after the trial court denied Ms. Kay's motion to compel and granted Mr. Humerickhouse's objection; scheduling a motion for temporary attorney's fees and then canceling the hearing; and that all orders were prepared by Mr. Humerickhouse's attorney. It is the complete denial of attorney's fees in this order that Ms. Kay brings for our review.
The purpose of section 61.16(1), Florida Statutes (2005), in permitting an award of attorney's fees in dissolution and postdissolution proceedings is to ensure that both parties will have similar financial ability to obtain competent legal counsel. The primary factor in considering whether to award one party's fees is the financial resources of the parties. Other factors that may also be considered include the merits of the parties' respective positions, the duration of the litigation, whether the litigation is brought or maintained primarily to harass, or whether the defense is brought primarily to frustrate or stall. In any case where the court finds that an action is frivolous or spurious or was brought primarily to harass the adverse party, the trial court has the discretion to deny a request for attorney's fees. Rosen v. Rosen, 696 So.2d 697 (Fla.1997). Furthermore, it is not necessary that one party be completely unable to pay attorney's fees for the court to require the other party to pay those fees. Canakaris v. Canakaris, 382 So.2d 1197, 1205 (Fla. 1980).
An award of attorney's fees in domestic support cases is not dependent on one party's success in the litigation but rather upon the parties' relative financial resources. Bullock v. Jones, 666 So.2d 224, 225 (Fla. 2d DCA 1995) (holding that "[t]he fact that the former wife lost on an issue, which is not spurious, does not mean that she could not be a candidate to receive attorney's fees from the former husband"); Diaco v. Diaco, 363 So.2d 183 (Fla. 2d DCA 1978). The trial court should also determine an attorney's fee award upon the parties' individual financial resources, not the financial assistance provided by family or friends. Mott v. Mott, 800 So.2d 331, 334 (Fla. 2d DCA 2001) (holding that the voluntary contributions of a live-in companion cannot be substituted for the legal obligation of a former spouse). In this case, it is undisputed that Mr. Humerickhouse is in a vastly superior financial position than Ms. Kay.
Despite the trial court's acknowledgment that Mr. Humerickhouse has a better ability to pay attorney's fees, it still denied her fees and costs based on two grounds: her receipt of a tax refund of $5854 from the prior year and the "needless actions" taken by her counsel. We hold that neither of these bases is sufficient to ground a complete denial of fees and that the trial court abused its discretion in so finding. See Keena v. Keena, 245 So.2d 665, 667 (Fla. 1st DCA 1971) (stating that the right to attorney's fees in a dissolution proceeding is not an absolute right but is founded upon equitable principles); see also Meloan v. Coverdale, 525 So.2d 935 (Fla. 3d DCA 1988).
The fact that Ms. Kay received a tax refund for the previous year does not change the stark disparity in the parties' respective financial resources. Even if a party has some means to pay, that does not disqualify her claim for fees where the *1146 contrast between the assets and income of the parties is so substantial as in this case. See Cullen v. Cullen, 884 So.2d 304, 306 (Fla. 2d DCA 2004) (citing Rosen, 696 So.2d at 699). Even counting the tax refunds from 2004, Ms. Kay's financial resources were significantly inferior to Mr. Humerickhouse's, which disadvantaged her in her ability to secure competent legal counsel.
With regard to the trial court's conclusion that Ms. Kay's attorney's actions were "needless," this finding is unsupported by the evidence and contrary to the law. The record shows that her attorney provided competent representation.
A party's lack of success in a child support matter is irrelevant to the issue of whether an award of attorney's fees is appropriate. Bullock, 666 So.2d 224; Diaco, 363 So.2d 183. In any event, Ms. Kay was successful in having the abatement of child support spread out over time to lessen its impact instead of having it completely cease until the credit was accounted for. She also prevailed in having the child support amount increased to match the current guidelines, although she did not prevail in securing a deviation upward from those guidelines.
Furthermore, it is not a needless action to file a motion to compel disclosure of certain documents which were not provided, even after a party objects and even if such a motion is eventually denied. Had Ms. Kay's attorney not zealously asserted his client's interests, especially in trying to move the case forward to completion, he would be risking a claim of failing to provide competent representation to his client. Also, there is no evidence in the record that the good-faith letter was sent frivolously, in bad faith, or to harass the other party. Additionally, that Mr. Humerickhouse's attorney prepared all the necessary orders had no impact on the fees Ms. Kay's attorney earned, except to keep them lower than they could have been.
Finally, there is no evidence that the action of scheduling and then cancelling the hearing on the motion for temporary attorney's fees was done in bad faith or to harass. The record shows that the notice for the temporary fees hearing was sent more than a month in advance of the hearing date, and then later, when the notice for nonjury trial was received, Ms. Kay's attorney noted that the final hearing was scheduled only ten days after the temporary fees hearing. Due to the fact that the final hearing was such a short time later, it was reasonable to cancel the earlier hearing in the interest of judicial economy. We find no ground to criticize such a response.
Even if we were to conclude that the filing of the motion to compel mandatory disclosure, the mailing of the good-faith discovery letter, and the cancellation of the hearing for temporary attorney's fees were properly found to be unnecessary, or frivolous, or in bad faith, these actions totaled 1.3 hours of attorney time. This leaves 43.6 hours of attorney time expended that were not found to be unnecessary or unreasonable.
In Diaco, 363 So.2d at 186-87, a case with facts similar to Ms. Kay's, this court stated:
The wife herself was unable to pay her attorneys' fee. Instead, she paid her attorneys a part of their fee with money she obtained from her father for that purpose. She has neither separate income nor sufficient assets to otherwise pay an attorney to represent her and we see no reason why the willingness of her father to provide the necessary fee money to her should relieve the husband from a duty to provide such reasonable sums as will enable her to obtain representation *1147 equal to his own in these proceedings.
Even though she was unsuccessful in obtaining the relief she sought, the services of the attorneys were reasonably necessary to assist her in bringing the interests of these children before the court, and her efforts in doing so were certainly reasonable.
For the foregoing reasons, we conclude that the trial court abused its discretion in denying fees and reverse the order denying completely Ms. Kay's request for attorney's fees. We remand with instructions for the court to reconsider the award of attorney's fees and grant either partial or full relief to Ms. Kay.
Reversed and remanded for further proceedings.
DAVIS and KELLY, JJ., Concur.