997 So.2d 454 (2008)
H. Douglas BOHNER, Appellant,
v.
Jan D. BOHNER, Appellee.
No. 4D07-3234.
District Court of Appeal of Florida, Fourth District.
December 10, 2008.
Rehearing Denied January 16, 2009.
*455 Margaret M. Anderson of Margaret M. Anderson, P.A., Vero Beach, for appellant.
John G. Crabtree of John G. Crabtree, P.A., Key Biscayne and Jorge M. Cestero of Sasser, Cestero & Sasser, P.A., West Palm Beach, for appellee.
MAY, J.
The former husband appeals an order requiring him to obtain life insurance to cover alimony and child support payments and awarding the former wife attorney's fees. We affirm the order to the extent it required the former husband to obtain life insurance, but reverse the award of attorney's fees.
In 2002, the former husband and wife entered into a Marital Settlement Agreement (Agreement), which was adopted by the trial court in its Final Judgment of Dissolution of Marriage. The Agreement provided for the former husband to pay permanent periodic alimony of $5,350.00 per month, with the payments ending on the remarriage or death of the former wife or the death of the former husband. The *456 Agreement also provided for the former husband to pay child support payments of $2,042.00 per month.
Paragraph 14 addressed the issue of life insurance. Notwithstanding the provision terminating alimony upon the death of the husband, it stated that the "parties are in the process of creating life insurance trusts to secure the Husband's alimony and child support obligations." Paragraph 14 provided for the court to reserve jurisdiction on the issue of life insurance to secure the former husband's support obligations. The paragraph then provided that the former husband's alimony and child support obligations would survive his death, be binding on his estate, and the personal representative would be required to insure that the child support and alimony payments were provided. Paragraph 17 reemphasized that the child support obligations were binding on the former husband's estate.
The Agreement provided that "[e]ach party is solely responsible for his or her legal fees and costs for the preparation and execution of this Agreement." The former wife subsequently filed a motion to require the former husband to obtain life insurance to secure both the alimony and child support obligations. The trial court referred the matter to a general magistrate.
The magistrate heard evidence over the course of two hearings. The former wife testified to her need and that of the children and their dependence on the former husband's payment of alimony and child support. Testimony revealed that the former husband survived a diagnosis of a malignant melanoma more than ten years ago, and had recently had basil cell cancer removed from his face.
An expert witness testified that the former husband would be able to obtain a one million dollar, ten-year life insurance policy for $6,500 per year and a one million dollar, fifteen-year life insurance policy for $9,100 per year. A $650,000 policy would cost $5,000 a year for a ten-year term and $6,000 a year for a fifteen-year term. An expert witness for the former husband testified that life insurance would not be necessary in the event of the untimely death of the former husband.
The former husband testified that he currently has a life insurance policy with a one million dollar death benefit. The policy currently provides for $300,000 to be paid to the former husband's sister as trustee for the children; however, no written trust agreement memorializes the arrangement. The former husband's current girlfriend, whom he identified as his business partner, is the beneficiary of $650,000 "to secure liabilities to her or her corporation per a contract." The remaining $50,000 was designated to the former husband's mother. The former husband's insurance agency owns the life insurance policy based on an assignment that occurred after the former husband entered into the Agreement.
The magistrate found that special circumstances indicated a need for life insurance coverage to secure the former husband's support obligations. The magistrate further found that the former husband had the ability to obtain life insurance; in fact, he had a one million dollar policy already in effect. However, despite the Agreement, the former husband had seen fit to protect his girlfriend and business rather than to secure his support obligations.[1]
*457 The magistrate found that the former wife was entitled to an award of attorney's fees incurred in resolving the insurance issue ($12,745.60) and recommended that the former husband be ordered to obtain the requisite life insurance. The trial court accepted the magistrate's findings of fact, conclusions of law, and recommendations.
We find the trial court's order concerning life insurance is supported by the evidence and is certainly within its discretion. See Byers v. Byers, 910 So.2d 336, 346 (Fla. 4th DCA 2005). Substantial competent evidence supported the magistrate's and trial court's findings that: (1) the former wife significantly relies on the alimony to maintain the marital residence and raise the three children; and (2) the former husband can obtain and afford the necessary life insurance.[2] We therefore affirm on this issue.
We now review the attorney's fee award under an abuse of discretion standard. Stern v. Chovnick, 914 So.2d 524, 526 (Fla. 4th DCA 2005).
Although under section 61.16 "the financial resources of the parties are the primary factor to be considered," the Florida Supreme Court has identified "other relevant circumstances." Rosen v. Rosen, 696 So.2d 697, 700 (Fla.1997). Those factors include "the scope and history of the litigation; the duration of the litigation; the merits of the respective positions; whether the litigation is brought or maintained primarily to harass (or whether a defense is raised mainly to frustrate or stall); and the existence and course of prior or pending litigation." Rosen, 696 So.2d at 700. (construing the statute liberally, "to allow consideration of any factor necessary to provide justice and ensure equity between the parties").
Here, neither the magistrate nor the trial court articulated any basis for the conclusion that the former wife is in need. And the evidence did not support such a finding.
The former wife receives $64,200.00 per year in alimony. Combined with her imputed income of $30,000, the former wife's annual income approaches $100,000, without consideration of the child support payments. After subtracting the former husband's alimony and child support obligations, his annual income is still 75% greater than that of the former wife.[3] As the former husband correctly argues, disparity in income alone is insufficient to warrant an award of attorney's fees; rather, the party seeking relief must establish her need for the fee award. Zahringer v. Zahringer, 813 So.2d 181, 182 (Fla. 4th DCA 2002); Carlson v. Carlson, 719 So.2d 936 (Fla. 4th DCA 1998).
Regardless, the trial court did not make any factual findings concerning the former wife's need and did not state any reason why the former husband should be responsible for her attorney's fees. For these reasons, we reverse the award of attorney's fees. See Satter v. Satter, 709 So.2d *458 617, 618-19 (Fla. 4th DCA 1998) (reversing a fee award where there was no demonstration of the recipient's need).
Affirmed in part and reversed in part.
TAYLOR and HAZOURI, JJ., concur.
NOTES
[1] The Magistrate made very specific and detailed findings regarding the former husband's ability to provide the coverage.
[2] We note the conflicting provisions in the Agreement that concern alimony. The alimony provision specifically indicates that it will terminate upon the death of either the former wife or former husband. Yet, the life insurance provision just as clearly indicates that the parties were in the process of creating life insurance trusts to cover alimony and child support and that both alimony and child support would survive the former husband's death. However, the parties have not raised the conflict in these provisions or suggested a modification of the Agreement.
[3] In addition, the former wife filed a financial affidavit listing a total net worth of $730,124. However, this amount did not include a State Farm growth fund and State Farm retirement fund with a combined value of $219,000.