NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

JENNIFER C. MYRICK,                 )
                                    )
          Appellant,                )
                                    )
v.                                  )          Case No. 2D15-3181
                                    )
                                    )
DENNIS M. MYRICK,                   )
                                    )
                                    )
          Appellee.                 )
_____    )

Opinion filed March 24, 2017.

Appeal from the Circuit Court for
Hillsborough County; Tracy Sheehan,
Judge.

Elizabeth S. Wheeler of Berg & Wheeler,
P.A., Brandon, for Appellant.

Virginia R. Vetter, Tampa, for Appellee.


CRENSHAW, Judge.

          The former wife appeals the trial court's order denying her request for

attorney fees and costs and requiring her to pay the former husband's attorney fees and

costs incurred in this post-dissolution modification proceeding.  We affirm the denial of

the former wife's fees and costs without further comment.  Because the trial court erred

in ordering the former wife to pay nearly all of the former husband's attorney fees in this matter apparently as a sanction for the former wife's litigation conduct, we reverse.

The parties' marriage was dissolved by a final judgment entered in 2012 which incorporated the parties' Marital Settlement Agreement (MSA). Under the MSA, the parties agreed to have shared parental responsibility with respect to their minor child. They also agreed to a parenting plan and timesharing schedule wherein the former wife would have the majority timesharing with the child. The MSA provided that "[i]n the event that the Husband shall relocate his residence to within a ten (10) mile radius of the Wife's current residence, the parties agree to revisit the Parenting Plan and Timesharing Schedule with the minor child taking into consideration the Husband's proximity to the child."

In January 2013, the former husband relocated to within a ten mile radius of the former wife's residence and tried to revisit the timesharing agreement with the former wife. When the former wife apparently refused to amicably revisit the issue, the former husband obtained counsel who then filed a petition for modification in February 2013, seeking primary residential responsibility of the child, or, alternatively, joint rotating timesharing as well as a corresponding change to his child support obligation. Over the course of the proceedings, the former husband obtained new counsel and expanded his requests for relief. In response to the former husband's evolving requests, the former wife eventually suggested a 50/50 timesharing arrangement in October 2013. Nevertheless, the litigation continued and in his Second Amended Supplemental Petition for Modification filed in June 2014, the former husband sought sole parental responsibility and a majority of the timesharing. The case proceeded to a

final hearing on the former husband's latest modification petition in July and September of 2014, after which the trial court awarded the former husband 100% of the overnights with the child and ultimate parental responsibility regarding the child's educational and mental health issues. The former wife's contact with the child was restricted to alternate weekend days and Wednesday dinners after school.

Both parties then moved for attorney fees and costs. In his motion for attorney fees and costs, the former husband alleged that he did not have sufficient funds to pay his fees, that the former wife did have the ability to pay, and that she "should be required to do so, especially because of the unreasonable position she took in this case." The motion did not mention section 61.16, Florida Statutes (2014), Rosen v. Rosen, 696 So. 2d 697 (Fla. 1997), or any other basis for the award. After a hearing, the trial court denied the former wife's request for fees and costs and ordered the former wife to pay all of the former husband's fees and costs, totaling $99,876.24. Although the trial court did not explicitly state the basis for its award to the former husband, the court's findings and the cases cited in its order suggest that it awarded the fees under the inequitable conduct doctrine. See Bitterman v. Bitterman, 714 So. 2d 356, 365 (Fla. 1998). The trial court subsequently granted the former wife's motion for rehearing to the extent that the court reduced the former husband's fee award by $3550—representing the work of the former husband's first attorney—bringing the total amount to $96,326.24.

The former wife now argues that the fee award must be reversed because the trial court failed to make sufficient findings to justify the award under the inequitable conduct doctrine. Regardless of the lack of findings, she contends that her behavior in

this litigation did not rise to the level warranting application of the inequitable conduct doctrine. We agree.

"We review an award of attorney's fees . . . for abuse of discretion." Arena v. Arena, 103 So. 3d 1044, 1045 (Fla. 2d DCA 2013). "Any determination regarding an appropriate award of attorney's fees in proceedings for dissolution of marriage, support, or child custody begins with section 61.16, Florida Statutes . . . ." Rosen, 696 So. 2d at 699.

> Under this scheme, the financial resources of the parties are the primary factor to be considered. However, other relevant circumstances to be considered include factors such as the scope and history of the litigation; the duration of the litigation; the merits of the respective positions; whether the litigation is brought or maintained primarily to harass (or whether a defense is raised mainly to frustrate or stall); and the existence and course of prior or pending litigation.

Id. at 700. Distinct from this scheme, the trial court also has the inherent authority under the inequitable conduct doctrine to award attorney fees as a sanction where one party has exhibited egregious conduct or acted in bad faith. See Bitterman, 714 So. 2d at 365; Rogers v. Wiggins, 198 So. 3d 1119 (Fla. 2d DCA 2016); Hahamovitch v. Hahamovitch, 133 So. 3d 1020 (Fla. 4th DCA 2014). "Such awards are rarely applicable and should be reserved for extreme cases in which a party litigates vexatiously and in bad faith." Hallac v. Hallac, 88 So. 3d 253, 259 (Fla. 4th DCA 2012). "When a court uses its inherent authority to assess attorney's fees, the court must make an express finding of bad faith and include facts justifying the imposition of the award." Hahamovitch, 133 So. 3d at 1025; see also Moakley v. Smallwood, 826 So. 2d 221, 227 (Fla. 2002) ("[A] finding of bad faith conduct must be predicated on a high degree of specificity in the factual findings."). The trial court must also explicitly apportion the

amount of the award that is directly related to the attorney fees and costs that the opposing party incurred as a result of the additional work caused by the specific bad faith conduct of the other party.  Heiny v. Heiny, 113 So. 3d 897, 903 (Fla. 2d DCA 2013).  Unlike the scheme under section 61.16, when proceeding under the inequitable conduct doctrine the trial court does not need to make an express finding of need and ability to pay.  Becker v. Becker, 778 So. 2d 438, 439 (Fla. 1st DCA 2001).

Although the trial court did not explicitly state the basis for its award, it is evident that the court awarded the fees under the inequitable conduct doctrine.  For instance, the trial court made no mention of section 61.16 in the portion of the order awarding the former husband his fees and costs, nor did it make any findings regarding need and ability to pay.  The trial court also found several cases discussing the inequitable conduct doctrine "instructive," including Mettler v. Mettler, 569 So. 2d 496 (Fla. 4th DCA 1990), and its progeny.  Finally, many of the trial court's findings suggest that it was proceeding under the inequitable conduct doctrine:

> The Court specifically finds that this entire case, since it began at the Former Husband's relocation on January 9, 2013, was made necessary by the Former Wife's conduct, her actions, and her life choices. . . .  [T]he Court specifically finds a pattern of excessive, expensive, and needless litigation. . . .  [T]he Court finds that the Former Wife's actions have been abusive of the judicial system, not of taking up this Court's time, but to the two years of the parties' respective lives and that of their young son.

Having identified the trial court's basis for the award, we conclude that the trial court failed to make the specific findings to justify the award under the inequitable conduct doctrine.  Nowhere in the order did the trial court make a finding that the former

wife acted in bad faith.[1]  On the contrary, the trial court found that it did not know why the former wife litigated the case:

> The Court does not know why [the former wife] has kept up the litigation and can only suppose that it may be in some manner related to the mental problems or perhaps it is just an obstinate refusal to appreciate that she is not a good person to parent the parties' child.

And with the exception of a finding relating to additional work caused by the former wife's "apparent decision to remain un- or under-employed," the court failed to adequately describe how any specific misconduct caused additional work.  In essence, the trial court determined that all[2] of the former husband's second attorney's work in this case constituted additional work caused by the former wife's "conduct, her actions, and her life choices."  The trial court's blanket finding simply lacks the "high degree of specificity" required by Moakley.  826 So. 2d at 227.

Apart from the lack of findings, the fee award constitutes an abuse of discretion because the former wife's conduct in this case does not rise to the level of conduct that the inequitable conduct doctrine was intended to punish.  See Rogers, 198 So. 3d at 1122 ("While the trial court viewed the mother's actions as selfish and contrary

---

[1]Declining to "elevate form over substance," this court has explained that the failure to recite the specific words "bad faith" is not per se reversible error where the order "details the specific conduct at issue" and "clearly state[s] that [the sanctioned party's] actions were 'improper and deliberate' and resulted in a miscarriage of justice." Robinson v. Ward, 203 So. 3d 984, 990 (Fla. 2d DCA 2016).  But unlike Robinson, which involved an attorney's intentional and purposeful violations of the trial court's prior rulings, here the trial court made no findings that the former wife intentionally and purposefully violated its rulings, nor did the court detail the specific improper conduct justifying the award.

[2]Although the trial court found that the former wife's conduct caused all of the work in this case, both the former husband and his second attorney suggested at the fee hearing that the former wife was responsible for only "95[%] of everything that was done in this case."

to the best interests of the child, those findings in and of themselves do not support an award of fees as a sanction under the inequitable conduct doctrine.").  The trial court found that "[i]f the Former Wife, when the Former Husband came back into town, had agreed to a 50/50 time-sharing arrangement, an agreement would have been prepared for about a thousand dollars and the matter would be over."  But the former wife's refusal to accede to the former husband's request for increased timesharing out of court does not constitute bad faith or vexatious litigation and the former wife cannot be ordered to pay the former husband's fees and costs simply because she refused to settle the case.  See Hallac, 88 So. 3d at 260–61 ("[T]he trial court abused its discretion in awarding fees to the husband to be assessed against the wife, because the refusal to settle the case in and of itself cannot be the basis for an award of attorney's fees against the refusing party.").  Moreover, the MSA only provided that the parties would revisit the timesharing issue—it did not specify what new arrangement would be considered.  Indeed, the fact that the former husband's first petition for modification requested more than just a 50/50 timesharing arrangement and the fact that the former husband continued the litigation after the former wife agreed to a 50/50 arrangement belie the contention that the former wife could have avoided the litigation entirely.

Accordingly, we affirm the denial of attorney fees and costs to the former wife and reverse the award of attorney fees and costs to the former husband.

Affirmed in part and reversed in part.


KELLY and ROTHSTEIN-YOUAKIM, JJ., Concur.