# Third District Court of Appeal

## State of Florida

Opinion filed March 29, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-652
Lower Tribunal No. 10-31827
_____

**Susan M. Rorrer f/k/a Susan M. Orban,**
Appellant/Cross-Appellee,

vs.

**Robert G. Orban,**
Appellee/Cross-Appellant.

An Appeal from the Circuit Court for Miami-Dade County, Spencer Eig, Judge.

Damary Valle Stokes, for appellant/cross-appellee.

Lubell & Rosen and Norman S. Segall, for appellee/cross-appellant.

Before WELLS, ROTHENBERG and LAGOA, JJ.

WELLS, Judge.

Susan M. Rorrer f/k/a Susan M. Orban (Ms. Orban, herein) appeals from a final order awarding attorneys' fees and costs in this post-dissolution proceeding. The former husband, Robert G. Orban, cross-appeals the same determination. Because we find that the trial court erred in applying its own formula rather than the requirements set out in section 61.16 of the Florida Statutes and controlling case law including Rosen v. Rosen, 696 So. 2d 697 (Fla. 1997), and Canakaris v. Canakaris, 382 So. 2d 1197 (Fla. 1980), we reverse.

"Any determination regarding an appropriate award of attorney's fees in proceedings for dissolution of marriage, support, or child custody begins with section 61.16." Rosen, 696 So. 2d at 699. That section in part provides:

> (1) The court may from time to time, after considering the financial resources of both parties, order a party to pay a reasonable amount for attorney's fees, suit money, and the cost to the other party of maintaining or defending any proceeding under this chapter, including enforcement and modification proceedings and appeals. In those cases in which an action is brought for enforcement and the court finds that the noncompliant party is without justification in the refusal to follow a court order, the court may not award attorney's fees, suit money, and costs to the noncompliant party.

§ 61.16(1), Fla. Stat. (2016).

"The purpose of this section is to ensure that both parties will have a similar ability to obtain competent legal counsel. Canakaris v. Canakaris, 382 So. 2d 1197 (Fla. 1980)." Rosen, 696 So. 2d at 699. As the Rosen court went on to explain, "[i]n Canakaris, we noted that it is not necessary that one spouse be completely

2

unable to pay attorney's fees for the trial court to require the other spouse to pay those fees. In other words, to ensure that both parties have similar access to competent legal counsel, the trial court must look to each spouse's need for suit money versus each spouse's respective ability to pay." Id.

Here, over four years of extensive litigation followed the parties' dissolution of marriage during which the trial court addressed a number of issues concerning the parties' four children and the alimony Mr. Orban had been ordered to pay. Ultimately, Ms. Orban sought to be compensated for the attorney's fees and costs she had incurred relating to this post-judgment litigation.

In the final fee order, the trial court specifically found that "the Former Husband's improper conduct . . . created otherwise unnecessary litigation and required unnecessary judicial intervention." The order also observed that Mr. Orban had a "far superior financial ability to pay professional fees, including attorney fees and costs." Rather than relying on the financial condition of each spouse and Mr. Orban's litigious behavior to arrive at a fee award, the trial court decided to apply a formula of its own making in an effort to, by its own observation, act as a "disincentive" to future litigation:

> [By the court]: [T]he court in general, as I mentioned yesterday, does not, even though the petitioner is seeking a 100 percent of her fees, the court does not like to award a 100 percent of fees because it forms a disincentive for a party to economize if somebody else is paying all of their fees. I prefer to allocate fees and costs as on the percentage basis of the disparity in income between the parties.

3

Apparently to this end, the trial court in its initial fee order first amalgamated the parties' fees by adding Ms. Orban's fees and costs ($230,802.35)[1] to Mr. Orban's fees and costs ($284,470.30) for a total of $515,272.65, and then ordered each party to be responsible for a portion of that amount approximately equal to the percentage each contributed to their joint income. Specifically, Mr. Orban was ordered to pay 89% and Ms. Orban was ordered to pay 11% of the total expended by both parties ($515,272.65) for attorneys' fees and costs.[2] Mr. Orban also was ordered to pay an additional $6,000 to Ms. Orban's new counsel.

Thereafter, the trial court, using the same methodology used in the initial order, issued an amended fee order. This order first determined that the correct amount of attorney's fees and costs incurred by Ms. Orban was $238,924.91 (the initial $230,802.35, plus the $6,000 award to her new attorney in the original order,

[1] The trial court initially found the testimony of Ms. Orban's counsel supported an award of $222,381.89 in fees and costs of $8420.46 in cost. This totaled $230,802.35.

[2] As to the parties' incomes, the trial court found:

> [T]here is substantial disparity in the parties' respective incomes insofar as the Former Husband's income, less court ordered obligations, is $336,741.00 and the Former Wife's income is $44,000.00 [for a total of $380,741.00].

To be accurate, $336,741 is 88.44% of $380,741; $44,000 is 11.56% of $380,741.

as well as $2,122.56 in additional fees she had incurred). The court then added this amount ($238,924.91) to the amount incurred by Mr. Orban ($284,470.30) to arrive at a fee total for both parties of $521,272.65.[3] The court then applied a more exact formula based on the precise percentage each party contributed to their joint income (88.44% for Mr. Orban, 11.56% for Ms. Orban) to obligate Mr. Orban to pay a total of $178,665.65 of Ms. Orban's $238,924.91 in fees and costs.[4]

_____

[3] While we are well aware that adding $238,924.91 to $284,470.30 amounts to $523,395.21, for reasons not explained, the court below, after adding $2,122.56 to the other amounts expended by Ms. Orban to arrive at a total fee for her of $238,924.91, then deducted that same amount ($2,122.56) from the total amount of fees she incurred to arrive at a total fee expenditure by both parties of $521,272.65 ($284,470.30 plus $238,924.19 - $2,122.56 [with a .72 disparity]).

[4] The final order actually awards only $134,315.46 to Ms. Orban. That number accounts for sums previously ordered credited to Mr. Orban as follows:

| | | |
|---|---|---|
| 88.44% of the $515,272.65 total | = | $461,013.53 |
| Less Mr. Orban's entire fees/costs | - | $284,470.30 |
| | | $176,543.23 |
| Less previous credits to Mr. Orban | - | $ 44,350.00 |
| | | $132,193.23 |
| Plus the new attorney fee award | + | $ 2,122.56 |
| Total awarded to Ms. Orban | | $134,315.[79] |

We take no issue with the missing 33 cents.

5

This allocation, aimed as it was at encouraging the parties to economize in litigation, we find to be contrary not just to the goal enunciated long ago in Canakaris "that neither spouse pass[] automatically from misfortune to prosperity or from prosperity to misfortune," but also to the requirements of section 61.16. Canakaris, 382 So. 2d at 1204. As this court found in Gomez v. Gomez, 642 So. 2d 107, 107-08 (Fla. 3d DCA 1994), use of a "report [that] concluded that because appellee earned sixty eight percent (68%) of the parties' total income, he should be made to pay only sixty eight (68%) of the fees and costs of both parties," was improper because "it is well established in dissolution cases that attorneys' fees and costs are to be borne by the party who has the superior or greater financial ability to pay." Our sister court in Widder v. Widder, 673 So. 2d 954, 955 (Fla. 4th DCA 1996), similarly rejected the use of such formulas:

> At bar, the trial court erred as it did not appropriately consider the relative financial circumstances of the parties in assessing whether to award fees to the former wife. Rather, the trial court used a method of apportioning the attorney's fees in accordance with the same percentages of child support they were required to pay as per the final judgment and section 61.30, Florida Statutes (1991). . . .

> While we are sure that the trial court was well meaning in trying to mold a solution . . . this was still not the method envisioned by the legislature for awarding fees in post-dissolution proceedings under section 61.16, even when the issues involve the parties' children. . . . [T]he fee determination must still be made by considering the relative financial circumstances of the parties as per section 61.16 and the cases interpreting it, and using the appropriate inquiry of whether one party has the need for such fees and the other party has the ability to pay them.

Accord Wheeler v. Wheeler, 679 So. 2d 31, 32 (Fla. 4th DCA 1996); see also Lowman v. Lowman, 724 So. 2d 648, 650 (Fla. 2d DCA 1999) ("Where there is a substantial disparity between the parties' incomes, it may be an abuse of discretion to grant a partial attorneys' fee award."); accord Mount v. Mount, 989 So. 2d 1208, 1210 (Fla. 2d DCA 2008) (confirming that in a post-dissolution modification proceeding "the proper inquiry [when making a fee determination] is whether one spouse has a need for suit money and whether the other has the ability to pay"); Kelly v. Kelly, 925 So. 2d 364, 369 (Fla. 5th DCA 2006) (noting husband's "far superior financial posture" and the delay tactics he employed and concluding "that the trial court breached its discretion in not granting Laurie all or most of the fees and costs expended by her attorney"); Baker v. Baker, 754 So. 2d 754, 755 (Fla. 3d DCA 2000) ("It is clear from this record that Roland's significant earnings give him a far superior ability to pay Addie's attorney's fees and costs. The law is clear that in dissolution cases attorney's fees and costs are to be borne by the party who has the greater ability to pay.  Accordingly, Roland should pay all of the attorney's fees and costs.") (citations omitted); Heller v. Kuvin, 490 So. 2d 245, 245 (Fla. 3d DCA 1986) ("While the record demonstrates that both parties have sufficient funds to pay the wife's legal fees and costs, it is also apparent that the husband's ability to pay these fees is superior to that of the wife . . . . In view of the husband's superior ability to pay, we think, and so hold, that the trial court abused its

7

discretion in requiring that the husband pay only $8,000, rather than the entire $14,000, for the wife's attorney's fees.").

That is not to say, and we do not hold today, that a trial court in a chapter 61 matter may not award only a portion of the fees and costs incurred by a party. We hold only that it was error below to apply a formula based on the parties' respective incomes to determine the amount to be awarded to Ms. Orban. The error in using a formula was further compounded here by the trial court's failure to account for its own finding as to Mr. Orban's "improper conduct which created otherwise unnecessary litigation and required unnecessary judicial intervention." See Rosen, 696 So. 2d at 700-01. By failing to so account, it would appear that the only party being discouraged from further litigation was Ms. Orban, who after being subjected to "improper conduct" by Mr. Orban, which ran up the amount of fees and costs incurred, was obligated to pick up part of the tab for it.

In sum, the trial court's errors were multi-fold. It wrongfully combined the attorney's fees and costs of the parties and then awarded Ms. Orban only a portion of that total based on a comparison of her income to Mr. Orban's rather than on determination of need and ability to pay. The trial court further failed to consider or account for Mr. Orban's documented improper litigious behavior, to finally rely on the court's own self-proclaimed vision

8

of how to get litigants to economize on their legal expenses. What resulted was a calculation that unfairly and impermissibly penalized Ms. Orban.

This resolution makes it unnecessary for us to address any of the issues raised on cross-appeal, except that relating to the trial court's jurisdiction to enter a fee award where many orders entered during this post-dissolution matter included no reservation of jurisdiction to do so. Specifically, relying solely on the Fourth District Court of Appeal's 1991 decision in Cibula v. Cibula, 578 So. 2d 519 (Fla. 4th DCA 1991) (en banc), Mr. Orban argues that because each of the orders on the parties' sixty or so motions filed during this post-decretal proceeding did not reserve jurisdiction to award attorney's fees, these matters could not be considered when entering a fee award:

> Because each post-judgment proceeding stands on its own, it was necessary for the Former Wife to prove reasonable fees based only upon matters that contained an award of reservation of jurisdiction. Attorneys' fees could not have been awarded for anything other than five orders that had a reservation of jurisdiction because the trial court lost jurisdiction over the others, and there was no evidence of the time spent or reasonability of the time on any of those.

In Cibula, the en banc court concluded that because a number of post-decretal orders resolving several contempt proceedings failed to reserve jurisdiction to award attorney's fees, the trial court was without jurisdiction to later award fees upon resolution of a pending modification proceeding. In a dissenting opinion joined in by Judges Letts, Dell, and Farmer, Judge (later Justice) Anstead

9

stated, "I think the legislature meant what it said when it used the broad phrase 'may from time to time,' in authorizing trial judges to award fees in dissolution proceedings, including enforcement actions. It seems unnecessary, and impractical, to require a reservation of jurisdiction in an enforcement order." Id. at 521. Nearly thirteen years later, this same court acknowledged, although in a different context, that Judge Anstead was indeed correct.

In Gosselin v. Gosselin, 869 So. 2d 667, 669 (Fla. 4th DCA 2004) (footnote omitted), the Fourth District confirmed that while many post-decretal orders may be final for the purposes of appeal, arguably requiring contemporaneous fee motions and orders, "it [did] not necessarily follow that each of these orders must be deemed a 'judgment'" so as to mandate a separate fee order:

> Whether a post-decretal order is final or non-final is a source of confusion, even among experts in the field.
>
> . . . .
>
> In this case, many of the orders addressed in the amended motion for fees and costs were final orders . . . for purposes of filing an appeal. However it does not necessarily follow that each of these orders must be deemed a "judgment" within the meaning of Rule 1.525.[5] That rule contemplates that a single motion for fees must be

---

[5] That rule provides:

> Any party seeking a judgment taxing costs, attorneys' fees, or both shall serve a motion no later than 30 days after filing of the judgment, including a judgment of dismissal, or the service of a notice of voluntary dismissal, which judgment or notice concludes the action as to that party.

filed within thirty days of what is typically the single judgment in a case. The drafters of Rule 1.525 likely never contemplated that it would be applied to post-decretal orders in marital dissolution cases. In such cases, especially where minor children are involved, a final judgment of dissolution will, as here, typically result in several post-decretal orders accumulating in short order. It would seem both awkward and inconsistent with the general practice in this area to require separate attorney's fee motions to be brought each time a post-decretal order issues.

In this regard, we look to the language of section 61.16, Florida Statutes, which governs attorney's fees in dissolution actions. This section states that the court "may from time to time" award fees to a necessitous party. We note that the "bright-line" purpose of Rule 1.525 to "resolve the uncertainty surrounding the timing of these motions"[] will grow dimmer if parties are routinely required to decide whether a particular post-decretal order is sufficiently final to constitute a separate judgment under the rule.

Instead, we adopt a bright-line construction consistent with both the simplifying purposes of Rule 1.525 and the practice under Fla. Sta. section 61.16, by holding that Rule 1.525 does not apply to post-decretal orders in marital dissolution actions. In such cases, so long as a party seeks fees within a reasonable time after the post-decretal work was performed, such motion will be timely filed.

The following year, the Florida Supreme Court adopted Family Law Rule of Procedure 12.525 which in its entirety provides "Florida Rule of Civil Procedure 1.525 shall not apply in proceedings governed by these rules." Amendments to the Florida Family Law Rules of Procedure (Rule 12.525), 897 So. 2d 467 (Fla. 2005). In doing so, the Supreme Court confirmed that different rules apply in family matters from those that apply in other civil matters:

---

Fla. R. Civ. P. 1.525.

11

We agree that rule 1.525 should not apply in family law proceedings. The method of taxation of attorneys' fees and costs in family law cases is quite different from that in civil litigation. Whereas the former is based on need and ability of the parties to pay, the latter is based on prevailing considerations. Moreover, section 61.16, Florida Statues (2004), already governs the award of attorneys' fees and costs in family law cases. See also Rosen v. Rosen, 696 So. 2d 697, 699 (Fla. 1997) (noting that "[a]ny determination regarding an appropriate award of attorney's fees in proceedings for dissolution of marriage, support, or child custody begins with section 61.16, Florida Statutes").

Id. at 467-68.

By citing to Rosen, the Court further confirmed its earlier determination that under section 61.16 "a trial court may from time to time, i.e., depending on the circumstances surrounding each particular case, award a reasonable attorney's fee after considering the financial resources of both parties" as well as "other relevant circumstances" including " the scope and history of the litigation; the duration of the litigation; the merits of the respective positions; whether the litigation is brought or maintained primarily to harass (or whether a defense is raised mainly to frustrate or stall); and the existence and course of prior or pending litigation." Rosen, 696 So. 2d at 700.

Post-decretal proceedings commenced in this case almost as soon as the marriage was dissolved when Ms. Orban filed a verified motion for contempt and to enforce the marital settlement agreement claiming that Mr. Orban was engaging in a personal vendetta against her, harassing her and disparaging her to the parties'

12

four minor children. She also claimed, among other things, that he was in arrears in child support payments. This petition was shortly followed by Mr. Orban's petition to modify the final judgment claiming that Ms. Orban was living in a supportive relationship thereby entitling him to terminate alimony. Thereafter, motion upon motion to enforce various portions of the marital settlement agreement, as well as motions to compel discovery and other matters, followed. While virtually all of these motions requested a fee award, not all of the orders thereon made a fee award or reserved jurisdiction to do so later.[6]

Finally, in 2015, after years of litigating issues related to timesharing, support, visitation, and many other matters regarding the parties' children, as well as litigating issues relating to alimony and discovery related to these matters, the trial court heard the remaining matters pending between the parties: Mr. Orban's petition to modify alimony and his counter-petition to modify timesharing; and Ms. Orban's petition to modify the parenting plan for the parties' children. While both parties had diligently requested fee awards in their motions throughout these proceedings, each filed additional fee motions shortly before the final hearing.

Apparently feeling unconstrained by the argument he currently makes here, Mr. Orban sought to recover for fees and costs he incurred relating to the many

---

[6] Many of these orders clearly state that they are temporary orders.

orders entered throughout the entire proceeding, even those without any fee provision, arguing in part:

> For three years, the Former Husband has been subjected to vexatious litigation by the Former Wife. He is entitled to recover his attorney's fees incurred in defending the same.

Ms. Orban similarly sought an award of attorneys' fees incurred throughout the litigation because of "the Former Husband's improper conduct which created otherwise unnecessary litigation and required otherwise unnecessary judicial intervention." Ultimately, the court below determined, based expressly on Rosen and section 61.16, that Ms. Orban was entitled to a fee award for the costs she had incurred "in these post-judgment proceedings."

As Rosen and its progeny confirm, the court below clearly had jurisdiction to consider "the scope and history of [this] litigation; the duration of [this] litigation; the merits of the respective positions; whether [this] litigation [was] brought or maintained primarily to harass [or to frustrate or stall]" as well as "the existence and course of prior or pending litigation" irrespective of whether fee awards had been addressed in orders entered during this post-decretal litigation. See Rosen, 696 So. 2d at 700.

In sum, we conclude that the decision in Cibula does not support a determination that the court below was without jurisdiction to consider any portion of these post-decretal proceedings or would be required to parse out individual

orders because they did not include a fee award when entering the final fee award at the conclusion of this proceeding. Rather, under section 61.16 and Rosen, the trial court was permitted to award Ms. Orban a reasonable amount for the attorney's fees and costs she incurred for maintaining or defending the various matters that occurred all the way up to, and including, the time of the final hearing in this case.

Accordingly, we reverse the order under review and remand for entry of a new fee award based on the criteria set forth in section 61.16 of the Florida Statutes.