NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

HEATHER DERONER HOROWITZ,  )
            )
   Appellant,     )
            )
v.           )  Case No. 2D18-2074
            )
MICHAEL E. HOROWITZ,   )
            )
   Appellee.     )
_____)

Opinion filed May 29, 2019.

Appeal from the Circuit Court for
Hillsborough County; Anne-Leigh Gaylord
Moe, Judge.

Mark F. Baseman of Felix, Felix &
Baseman, Tampa, for Appellant.

Philip S. Wartenberg of Allen Dell, P.A.,
Tampa, for Appellee.


SILBERMAN, Judge.

   Heather Deroner Horowitz, the Former Wife, seeks review of the final

judgment dissolving her fifteen-and-a-half-year marriage to Michael E. Horowitz, the

Former Husband. The issues on appeal all arise from the bridge-the-gap and durational

alimony awarded to the Former Wife. She challenges (1) the denial of permanent

periodic alimony, (2) the award of bridge-the-gap alimony as reimbursement rather than

prepayment, (3) the immediate imputation of income to her, and (4) the amount and term of the durational alimony. We affirm as to issues one and two without comment. We reverse as to issues three and four and remand for the court to defer the imputation of income and reconsider the amount of the durational alimony award.

At the time of the parties' marriage in September 2001, the Former Wife was working full-time as an administrative assistant. The Former Wife left the workforce from 2005 until 2010 to raise the parties' children. While the Former Wife returned to the workforce in 2010, she failed to successfully maintain full-time employment and had trouble keeping part-time jobs. By the time of trial, the forty-two-year-old Former Wife was unemployed. She requested permanent periodic alimony, asserting that she was unable to maintain full-time employment due to certain physical and mental disorders. The Former Husband opposed the Former Wife's request, asserting that the Former Wife was physically and mentally capable of maintaining full-time employment.

The trial court ordered a vocational evaluation, and evaluator Lisa Jacobson concluded that the Former Wife was capable of handling full-time employment. Jacobson determined that with her qualifications the Former Wife would be able to find a job with an annual salary of between $22,000 and $35,000 within six months. However, Jacobson also recognized that the Former Wife suffered from situational depression due primarily to the parties' divorce. Jacobson concluded that the Former Wife needed therapy and life coaching to help her work through her depression and transition to full-time employment.

The trial court found Jacobson's vocational assessment "credible and consistent with the other credible evidence presented." The court imputed income to

the Former Wife based on full-time employment earning $13/hour ($2253.33 monthly or $27,040 annually). The court denied the Former Wife's request for permanent periodic alimony and instead awarded her durational alimony of $2000/month for sixty-nine months. The court also awarded the Former Wife bridge-the-gap alimony of up to $500/month for twelve months to pay for the recommended therapy and life coaching. However, the court declined to defer the imputation of income and thus required the Former Wife to obtain employment immediately.

The Former Wife argues the trial court erred by imputing income effective immediately instead of giving her time to get the counseling she requires. She also argues that that the trial court's failure to make findings regarding the parties' monthly expenses requires reversal of the durational alimony award. We find merit in both arguments.

## 1.    Imputation of Income

A dissolution court may impute income to a party upon finding that the party is voluntarily unemployed or underemployed and has not been diligent in finding employment. Velez v. Montalvo-Velez, 253 So. 3d 117, 119 (Fla. 2d DCA 2018). The voluntary unemployment or underemployment must not be "due to a physical or mental incapacity or other circumstance beyond the [party's] control." McDuffie v. McDuffie, 155 So. 3d 1234, 1236 (Fla. 1st DCA 2015). "A court may impute income if a party is earning less than he could, based on a showing that he has the capability of earning more by the use of his best efforts." Soria v. Soria, 237 So. 3d 454, 461 (Fla. 2d DCA 2018) (quoting Alpert v. Alpert, 886 So. 2d 999, 1001 (Fla. 2d DCA 2004)). This court

will affirm a decision to impute income if it is supported by competent, substantial evidence. Velez, 253 So. 3d at 119.

The Former Wife argues that the trial court erred by imputing income effective immediately instead of giving her time to get the counseling she requires. She contends that the evidence established that her situational depression prevented her from obtaining employment without therapy or life coaching. We agree that the immediate imputation of income is not supported by competent, substantial evidence.

While Jacobson determined that the Former Wife was capable of handling full-time employment, Jacobson also recognized that the Former Wife needed therapy and life coaching to help her transition to full-time employment. In the vocational evaluation, Jacobson concluded

> Clearly, the Wife's emotional issues will impede her ability to show-up and present herself in a way that is suitable for employment. With therapy, the Wife can work on beliefs (conscious and unconscious), the accuracy of her thoughts and self-destructive behavior patterns. In my opinion, it is critical for all parties to understand the importance of the Wife committing to therapy for her overall well-being and progress. Her present emotional state makes her a less than desirable candidate for employment. As a bare minimum, one must show up for an interview on time and present oneself in the best possible light. Further, therapy will help the Wife gain insight into character issues related to honesty and emotional issues related to blaming others instead of taking partial ownership.
>
> Vocationally, the wife needs no additional training or certifications. More importantly, the Wife needs to work on her attitude of blame and entitlement. While the wife openly declares she wants only to work part time, and is of the belief that she is not capable of working full time, I disagree. If the Wife can overcome her sense of entitlement, and victimization, she has the potential to enjoy a full and gratifying career. . . .

> Further, with therapy the Wife can put entitlement and victimization behind her.

(Emphasis added.)

As indicated previously, the trial court expressly found Jacobson's opinions to be "credible and consistent with the other credible evidence presented." Moreover, the court recognized the need to improve the Former Wife's emotional state before she could maintain employment when making its oral pronouncements at the end of the trial. There was simply no evidence to support the court's decision to impute income immediately.

It appears that the court declined to defer the imputation of income because the Former Wife did not seek out therapy while the divorce was pending. The court noted as follows:

> The Wife testified that she believed she needed some form of therapy to get back to work. Although the Husband was paying a considerable amount of temporary support and covering most of the Wife's expenses, the Wife never sought the therapy she testified she felt she needed. Meanwhile, the evidence showed that the Wife had disposable income during this time, which she did not use to seek therapy.

However, the Former Wife was not ordered to obtain full-time employment until the final judgment was entered. Until that point, she was claiming that her physical and mental infirmities prevented her from working full-time. Thus, her failure to obtain the counseling she needed to become employable full-time did not provide a reasonable basis to refuse to delay imputing income. See Stewart v. Rich, 664 So. 2d 1145, 1149 (Fla. 4th DCA 1995) (reversing the court's decision to impute income to the former wife immediately because the evidence did not establish she had "the immediate ability to become partially self-supporting").

- 5 -

**2.    Durational Alimony**

In the final judgment, the trial court made the following broad findings regarding the parties' need for and ability to pay alimony: "The Wife has a need for support in light of the standard of living during the marriage.  The Husband has an ability to pay support.  His net monthly income as of the time of the final hearing was $12,132.19."  The court then awarded the Former Wife durational alimony of $2000/month for sixty-nine months, finding as follows: "The Husband has the present ability to pay durational alimony in the amount of $2,000 per month to the Wife.  Taking into account the alimony award of $2,000 per month, the Wife's net monthly income is $3,703."

The court also made findings regarding each of the alimony factors enumerated in section 61.08(2), Florida Statutes (2016).  The findings pertinent to need and ability to pay follow:

> 4.    Financial Resources of Each Party
>
> The Husband's financial affidavit reflected <u>a monthly deficit</u> to him.  The Husband further testified to <u>the increase of two separate mortgage payments</u> (on his Downs Drive property and on the parties' Simms Road property) of approximately six hundred dollars ($600) per month in additional tax escrow payments.  However, <u>the Court finds that, at two thousand dollars ($2,000) per month ($24,000 annually), this level of alimony does not create an unreasonable financial burden on the Husband, given his present income at approximately $218,000 per year</u>.
> In considering the parties' financial resources, the Court <u>considered the parties' actual and imputed incomes, assets and liabilities distributed in the equitable distribution scheme</u>, and the equalizing payment that the Wife will receive.
>
> . . . .

9.  All Sources of Income

The Court considered all of the evidence regarding the available sources of income.

(Emphasis added.)

The Former Wife argues that these findings are legally insufficient because they do not set forth the amount of her monthly living expenses and the amount of alimony the Former Husband is actually able to pay based on his monthly living expenses. Without such findings, the Former Wife argues, this court cannot determine how the trial court calculated the durational alimony award. The Former Wife argues that these omissions therefore preclude adequate appellate review of the amount of the award. We agree.

Section 61.08(2) provides, "In determining whether to award alimony or maintenance, the court shall first make a specific factual determination as to whether either party has an actual need for alimony or maintenance and whether either party has the ability to pay alimony or maintenance." The failure to make specific findings regarding need and ability to pay "may preclude meaningful appellate review[] and result in a case having to be reversed and remanded." Ruberg v. Ruberg, 858 So. 2d 1147, 1155 (Fla. 2d DCA 2003) (quoting Walsh v. Walsh, 600 So. 2d 1222, 1223 (Fla. 1st DCA 1992)).

Thus, even when the court makes findings regarding each of the section 61.08(2) factors, its failure to make findings "to allow for meaningful review of the *amount* of alimony awarded" constitutes reversible error. Ketcher v. Ketcher, 188 So. 3d 991, 993, 994 (Fla. 1st DCA 2016); see also Crick v. Crick, 78 So. 3d 696, 698 (Fla. 2d DCA 2012) (reversing an alimony award because "although the report and

recommendation contained findings as to the factors listed in section 61.08(2)(a)-(g), it did not contain the requisite findings as to the need of the former wife or the former husband's ability to pay").

> Dissolution of marriage cases are unlike other civil litigation. The final dissolution judgment is often not the end of the litigation process. The final judgment establishes ground zero for the purpose of petitions for enforcement, modification, and contempt proceedings. Without the statutorily-required findings of fact, it is difficult, if not impossible, to review the record for evidentiary support of the judgment, to enforce a judgment, or to subsequently determine if there has been a material change in circumstances sufficient to justify a modification of that judgment.

Fox v. Fox, 262 So. 3d 789, 793-94 (Fla. 4th DCA 2018) (en banc).

In this case, the trial court made some findings regarding the Former Husband's ability to pay. The court found that the Former Husband's monthly income was $12,132.19. The court also found that the Former Husband's financial affidavit showed that he had a monthly deficit. And the court noted that the Former Husband further testified that his mortgage escrow payments had increased $600/month.

But despite the court's finding that the Former Husband already had a monthly deficit, the court concluded that $2000/month "does not create an unreasonable financial burden on the Husband, given his present income at approximately $218,000 per year." This suggests that the court did not accept all of the monthly expenses claimed by the Former Husband. Indeed, the Former Wife asserts that the Former Husband's expenses reflect a much higher standard of living than is equitable. Or perhaps the court was considering the equitable distribution of particular assets or liabilities. Regardless, the court's lack of findings makes it impossible to review the

issue.  See Ketcher, 188 So. 3d at 993-94 (holding that the court's decision to "note" that certain evidence was disputed without making specific findings regarding need and ability to pay hampered review on the issue).

As for the Former Wife's need, the court made findings regarding the section 61.08(2) factors and imputed income of approximately $2250/month to her but failed to make any findings regarding the amount of the Former Wife's monthly expenses.  The Former Wife presented expert testimony that her monthly expenses totaled $5835.  However, the $2000 monthly alimony award provides the Former Wife a total monthly income of $3703, which is well short of this number.  The Former Husband asserts that the Former Wife's expenses are inflated and are only $3694.  It is also possible that the court was considering the equitable distribution of particular assets or liabilities.  However, the court's lack of all necessary findings makes it impossible to review the issue.  See Beck v. Beck, 852 So. 2d 934, 937 (Fla. 2d DCA 2003); O'Connor v. O'Connor, 782 So. 2d 502, 504 (Fla. 2d DCA 2001); Burnett v. Burnett, 237 So. 3d 447, 449 (Fla. 1st DCA 2018).

The Former Husband argues that any error in failing to make findings regarding the Former Wife's need is harmless because the trial court must have accepted the Former Husband's assertion that her need was $3694 and rejected her expert's testimony that her need was $5835.  See Esaw v. Esaw, 965 So. 2d 1261, 1264 (Fla. 2d DCA 2007) (recognizing that the failure to make specific findings in support of an alimony award is subject to harmless error review).  But see Fox, 262 So. 3d at 793 (contrasting Esaw).  The Former Husband points to the fact that the total of

the monthly imputed income and durational alimony ($3703) was just over the amount of the Former Wife's monthly expenses as calculated by the Former Husband ($3694).

Under these circumstances, we cannot agree that the trial court's failure to make specific findings is harmless. The Former Husband disputed several of the Former Wife's monthly expenses, and without factual findings it is impossible to tell which values the court accepted. Furthermore, we are unable to determine how the court factored in the assets and liabilities that were equitably distributed. Finally, the question of the Former Husband's ability to pay still needs to be resolved. Accordingly, we reverse and remand for the court to reconsider the amount of durational alimony. The court should "consider the parties' then-current circumstances in determining the amount of alimony." Ruberg, 858 So. 2d at 1155. And the court should make detailed factual findings in support of its determination of need and ability to pay.

In summary, we affirm the final judgment of dissolution with two limited exceptions. Because the immediate imputation of income was not supported by the evidence, we reverse and remand for the court to defer the imputation of income for a period of time appropriate to allow the Former Wife to obtain the recommended therapy and life coaching. Because the findings regarding the Former Wife's need and the Former Husband's ability to pay are legally insufficient, we reverse and remand for reconsideration of the amount of the durational alimony award.

Affirmed in part, reversed in part, and remanded.

SALARIO and BADALAMENTI, JJ., Concur.