# DISTRICT COURT OF APPEAL OF FLORIDA
## SECOND DISTRICT

_____

LORRINE NICOLE GOLLINER,

Appellant,

v.

DAVID W. GOLLINER,

Appellee.

No. 2D2025-0939

_____

June 19, 2026

Appeal from the Circuit Court for Hillsborough County; Kelly A. Ayers, Judge.

Mark F. Baseman of Felix & Baseman, Tampa, for Appellant.

Lawrence J. Hodz of Cortes Hodz Family Law & Mediation, P.A., Tampa, for Appellee.

VILLANTI, Judge.

Lorrine Nicole Golliner, the Wife, timely appeals the amended final judgment of dissolution rendered following a nonjury trial and the order affirming in part and denying in part her motion for rehearing. We find merit in three of the issues the Wife raises on appeal, as explained below, and therefore reverse the amended final judgment of dissolution and remand for further proceedings consistent with this opinion.

## I.    Background

The parties were married for twelve years at the time the Wife filed for dissolution in March 2022. They share two minor children, one born in February 2008 and the other born in March 2017. In May 2024, the parties entered into a marital settlement agreement that resolved all issues of equitable distribution, leaving alimony, child support, and attorney's fees for resolution at trial, which occurred within the same month.

A significant portion of the trial was devoted to the issue of alimony. The Wife requested durational alimony for seven years, the maximum length of time allowed under Florida law given the length of the parties' marriage. *See* § 61.08(8)(b), Fla. Stat. (2024) ("An award of durational alimony may not exceed 50[%] of the length of a short-term marriage, 60[%] of the length of a moderate-term marriage, or 75[%] of the length of a long-term marriage."). The Wife, who was thirty-nine years old at the time of trial, testified that she maintained the family's home and took care of their two children. The Wife holds a bachelor's degree in business administration with a concentration in financial management. She previously worked in "office jobs," and the most she ever earned was approximately $44,000, in 2014. At the time of trial, the Wife had not worked full time in ten years, and she had not worked in any capacity for seven years.

David Golliner, the Husband and a senior development engineer, was thirty-eight years old at the time of trial. His income was comprised of a salary, an annual bonus based on his company's performance, an annual bonus based on his own performance, and the issuance of restricted stock shares. He filed tax returns reflecting annual income of $295,000 (2019), $254,600 (2020), and $332,000 (2021) and pay stubs reflecting annual income of $315,000 (2022) and $248,000 (2023). He

filed financial affidavits for 2022 and 2023 reflecting annual income of $322,000 and $224,172, respectively.

Shortly after the Wife filed the petition for dissolution, a domestic violence incident occurred between the parties. The Wife testified at trial that the Husband went to the marital home, became angry during conversation, and tried to choke her. The Wife testified that the domestic violence incident, along with the Husband's conduct toward her and the children, caused her to have post-traumatic stress disorder (PTSD) and depression. She sought an injunction against the Husband, which was granted. The injunction was no longer in place at the time of trial.

The Wife testified that she was under the care of several physicians for her depression, anxiety, and PTSD. She testified that she was prescribed medication to help manage symptoms of those conditions. The Wife took a part-time job about six months after the domestic violence incident occurred but left two months later because her PTSD symptoms made working too difficult. At the time of trial, she had not attempted to find another job because of those symptoms interfering with her daily life.

The Wife filed three financial affidavits during the dissolution. The first affidavit, like her original petition, was completed pro se and listed $3,280 in monthly expenses. The second affidavit, filed in May 2023, listed $7,682 in monthly expenses. And the third affidavit, filed in February 2024, listed $13,408 in monthly expenses. The Wife testified that the February 2023 affidavit accurately reflected her expenses because she went through her statements and bills to reconcile the numbers, whereas with the other two she did not. She testified that she was using credit cards for her daily expenses and to pay her attorney's fees. The Wife testified that the parties enjoyed a comfortable lifestyle

3

that included annual vacations and regular attendance at sporting events and concerts.  She did not follow a budget.

The Husband, during his testimony, described a more modest lifestyle.  He denied taking frequent vacations or regularly attending sporting events or concerts, but he also admitted that his credit card statement reflected that he spent $5,000 on tickets for an upcoming concert.  The Husband denied choking the Wife during the domestic violence incident, but he acknowledged that they were "face-to-face" and that he placed his hands on her upper body.

The Wife's psychiatrist testified at trial that the Wife's transcranial magnetic stimulation (TMS) treatment and her prognosis for PTSD were speculative—she might improve but she might not.  The psychiatrist admitted that he did not discuss with the Wife whether her PTSD affected her ability to complete her daily tasks, nor was he aware of the medications she was taking.  The psychiatrist was not qualified as an expert to testify how the Wife's PTSD affected her ability to retain employment, and thus, he was unable to provide an opinion as to whether the Wife can work full-time.

The Husband presented vocational rehabilitation expert Christina Dillahunt-Aspillaga, who evaluated the Wife in January 2023.  Her evaluation consisted of assessing the Wife's educational background, work history, and ability to engage in meaningful productive activity.  She also administered standardized assessments of the Wife's aptitude, personality, health, and depression.  Dr. Dillahunt-Aspillaga opined that based on her evaluation, there were no significant impediments to the Wife's obtaining employment.  With her education and background, the Wife could reasonably expect to reenter the workforce in a business-adjacent role—such as financial support specialist, bookkeeper, or

auditing clerk—within six to nine months and earn between $42,000 and $50,000 per year. Dr. Dillahunt-Aspillaga testified that she was aware, during the evaluation, that the Wife was visibly distressed due to the dissolution, but she was not advised of any PTSD diagnosis the Wife may have received, nor did one of the standardized tests[1] administered to the Wife reflect high levels of stress or anxiety. Dr. Dillahunt-Aspillaga was aware of the Wife's attention deficit hyperactive disorder (ADHD), but she opined that with the proper support and in a work environment conducive to the Wife's challenges she could reasonably expect to maintain employment.

The trial court orally pronounced its ruling and findings after the parties closed. It found the Wife's testimony as to the domestic violence credible but that the Wife exaggerated the effect the incident had on her ability to work. The trial court found that the Wife was capable of working twenty hours per week at an imputed income of $17 per hour based on the unrefuted testimony of Dr. Dillahunt-Aspillaga. The court found the Wife's testimony regarding the parties' standard of living during the marriage more credible, finding that the parties lived "a really nice lifestyle" and that while the Husband would continue to live the same lifestyle, the Wife would not. The trial court further found that the Husband would continue to make the same income and that the Wife "has the ability to make a decent income," but the most that could be imputed to the Wife based on her education and employment history was $40,000 per year. Based on the above and additional findings, the trial court ordered the Husband to pay two years of bridge-the-gap alimony in the amount of $4,060 per month, which was the amount he had been

---

[1] The test Dr. Dillahunt-Aspillaga referenced is the Minnesota Multiphasic Personality Inventory (MMPI).

5

paying in temporary support. The trial court advised the Wife that the bridge-the-gap alimony would give her time to "get back on [her] feet and to distance [herself] from what happened." It also denied the Wife's request for retroactive support, finding that the Husband had paid the Wife's living expenses while the litigation was pending. The parties' counsel agreed to calculate the Husband's child support obligation and submit the figure to the court separately.[2]

The trial court had instructed the parties before trial began that it would hold a separate hearing on the Wife's request for attorney's fees, so no oral pronouncement was made at that time. However, when the final judgment was rendered, the trial court ordered both parties to pay their own attorney's fees without additional hearing. The Wife moved for rehearing, which the trial court granted in part and denied in part, and amended the final judgment to provide additional findings.

On appeal, the Wife raises four issues with the trial court's ruling. We find merit in three of them.

## II.    Alimony

The Wife argues that bridge-the-gap alimony is inappropriate in this case and that the trial court should have awarded her some length of durational alimony. We agree. "The trial court's award of alimony is subject to an abuse of discretion standard of review; and where the record does not contain substantial, competent evidence to support the trial court's findings regarding the amount of alimony awarded, the appellate court will reverse the award." *Giles v. Giles*, 298 So. 3d 1277,

---

[2] The parties stipulated to equal timesharing and equal payment of the children's expenses. Based upon the guidelines of section 61.30, Florida Statutes (2024), the trial court ordered the Husband to pay $293 in monthly child support to the Wife.

1281 (Fla. 2d DCA 2020) (quoting *Farley v. Farley*, 858 So. 2d 1170, 1172 (Fla. 2d DCA 2003)).

"Bridge-the-gap alimony may be awarded to provide support to a party in making the transition from being married to being single . . . [and] assists a party with *legitimate identifiable short-term needs.*" § 61.08(6) (emphasis added).  Bridge-the-gap alimony may not exceed two years, and it is not modifiable.  *Id.*  As with all alimony awards, the trial court must make specific, written findings of fact about the needs of the party seeking alimony and the ability to pay of the party from whom alimony is sought.  § 61.08(2).  If the respective need and ability to pay alimony are identified, the trial court must also make specific written findings relevant to the enumerated provisions of section 61.08(a)-(j).  *See Ogle v. Ogle*, 334 So. 3d 699, 702 (Fla. 1st DCA 2022).  The trial court made the requisite findings that the Wife was in need of alimony and the Husband had the ability to pay.

Relying on the testimony of Dr. Dillahunt-Aspillaga, the trial court found that the Wife is capable of twenty hours per week of work at a minimum of $17 per hour—approximately $20,000 per year—and imputed that income to her.  The trial court further recognized that it was unable to impute income based on the Wife's work history that was more than five years old.  *See* § 61.30(b)(2)a.  The court also made the following findings of fact in the amended final judgment relevant to the appropriateness of bridge-the-gap alimony:

**c. The age, physical, mental, and emotional condition of each party:**

Both parties are young. The Court recognizes the Wife's medical concerns, but the Court finds that the medical concerns will subside, and the Wife will have the ability to be employed and make an income.  The Wife's issues and

7

concerns are not permanent in nature and should not impact the Wife's ability to be employed.

**d. The financial resources and income of each party, including the income generated from both non-marital and marital assets:**

The Court finds the parties are similarly situated based on the equitable distribution of the assets and liabilities provided to each party. The Court finds that there is an income disparity between the parties as the Husband clearly makes more than the Wife will have the ability to make even if the Wife were to be employed full time.

**e. The earning capacities, educational levels, vocational skills, and employability of the parties, including the ability of either party to obtain the necessary skills or education to become self-supporting or to contribute to his or her self-support prior to the termination of the support, maintenance, or alimony award**:

The Court believes the Wife has the ability to make a decent income and the Husband will continue to have the opportunity to make the same income as the Husband is currently making.

. . . .

**h. Any other factor necessary for equity and justice between the parties, which shall be specifically identified in the written findings of fact:**

The Court finds that the domestic violence alleged by the Wife took place and that the Wife needs time to get back on her feet. Although the court concludes that the incident did occur, the Court believes that the Wife has used this as a "crutch" and has the ability to work.

With regard to factor (c), the trial court concluded that the Wife's medical concerns "would subside." No evidence was cited for this conclusion, and we must assume based on the trial court's other findings that it believed the Wife was embellishing her medical concerns. While there may be some validity to the trial court's assessment, the record evidence reflects that the Wife was under the care of several physicians

8

for documented diagnoses, that she was taking medication and submitting to TMS therapy at the time of trial, and that her psychiatrist testified at trial that he could not conclusively opine that the treatment would relieve her PTSD. The trial court's conclusion that the Wife's medical issues would subside is not supported by competent substantial evidence.

The trial court's findings with regard to factor (e) are also lacking. The trial court recognized that the Wife will always make substantially less than the Husband even if she returned to work full time, and even then, the most that could be imputed to the Wife was a salary of $40,000. The implication is that the Wife was to begin working immediately at a part-time job, "get over" her PTSD, and become completely self-supporting within two years. This conclusion also ignores the record evidence. Dr. Dillahunt-Aspillaga testified that a reasonable plan for the Wife's reentry to employment after ten years would involve assistance and training with job search, resume development, online training, and updating her business skills. But the trial court's findings do not include any of that information, nor do they include an "identifiable short-term need" that would be resolved within two years, other than the unsupported finding that the Wife's medical issues would subside by then. *See* § 61.08(6). Dr. Dillahunt-Aspillaga's opinion is more indicative of a rehabilitation strategy. However, bridge-the-gap alimony is not the same as rehabilitative alimony, and as the parties advised in their briefs, no specific rehabilitation plan was submitted to the trial court, as is required by the statute. *See* § 61.08(7); *see also Ogle*, 334 So. 3d at 703-04 (citing § 61.08(6)(b)).

The trial court's finding with regard to factor (h) assists us in understanding the purpose of the bridge-the-gap alimony award. Its

9

conclusion that the Wife is using the domestic violence incident and her depression as a "crutch," without more, is not an identifiable short-term need justifying bridge-the-gap alimony.  *See, e.g., Ogle*, 334 So. 3d at 703 ("The trial court does not make findings regarding any such 'need' to be covered, and there is no evidence in the record to that effect."); *see also Bell v. Bell*, 68 So. 3d 321, 327 (Fla. 4th DCA 2011) ("Bridge-the-gap alimony is most appropriately awarded in instances where the receiving spouse is already employed, possesses adequate employment skills, and requires no further rehabilitation other than a brief time to ease the transition to single life." (quoting *Cohen v. Cohen*, 39 So. 3d 403, 406 (Fla. 4th DCA 2010))).

Based on the foregoing, we conclude that the trial court abused its discretion in awarding bridge-the-gap alimony because it was not supported by competent substantial evidence.  Instead, the trial court should have awarded the Wife durational alimony, which is intended "to provide a party with economic assistance for a set period of time."  § 61.08(8)(a).  In this moderate-length marriage of twelve years, the Wife would be eligible for alimony for up to seven years, which is what she requested.  *See* § 61.08(8)(b) ("An award of durational alimony may not exceed . . . 60 percent of the length of a moderate-term marriage . . . ."); *see also Olguin v. Olguin*, 339 So. 3d 1061, 1065 (Fla. 2d DCA 2022).  Durational alimony is to be determined based upon "the obligee's reasonable need, or an amount not to exceed 35 percent of the difference between the parties' net incomes, whichever amount is less."  § 61.08(8)(c).

It is clear from the record evidence that although the Wife has a college degree and work experience, she had been unemployed for many years at the time of trial, and she also has limited earning potential

without additional education or training.  The trial court's characterization of a "decent income," which it imputed to the Wife, would scarcely cover her housing[3] and basic living expenses, let alone the additional fifty percent of the minor children's expenses for which she is obligated.  As the Wife points out, even if she eventually earned $50,000 a year—the upper limit of what Dr. Dillahunt-Aspillaga testified would be reasonable to impute—her monthly needs still exceed her net income.

On a related note, the Wife argues that the trial court failed to specify how it calculated her need for support, with which we also agree.  Despite filing three financial affidavits which reflected three different monthly needs, the trial court awarded an amount that was entirely different, and lower than the two financial affidavits she submitted with the assistance of counsel.  Based on the trial transcript, the trial court presumably agreed with the Husband that the Wife did not meet her burden in establishing her monthly needs and decided to simply award the amount the Husband had been paying for the Wife's mortgage, homeowner's association dues, and health and car insurances.  Even if the trial court did not find the Wife's testimony credible or discovery sufficient, the trial court's findings do not reflect that.  The Wife directs us to the fact that the trial court, while finding that the Husband has a monthly surplus of $7,000, acknowledged that the Husband will continue to enjoy the same standard of living and that the Wife will not, leading one to presume that the trial court unjustifiably rejected the

---

[3] At the time of trial, the parties intended to sell the condo in which the Wife lived with the two children.  The Wife testified that she assumed her monthly housing expenses would increase to approximately $2,500 per month, comparable to what the Husband paid in his monthly rent.

11

Wife's claimed monthly expenses. The Wife further points out the inequity of the trial court's accepting the Husband's monthly expenses based only on his financial affidavits and testimony but declining to accept hers based upon the same evidence without explanation.

When a trial court fails to make specific findings, it "may preclude meaningful appellate review." *See Olguin*, 339 So. 3d at 1065 (quoting *Horowitz v. Horowitz*, 273 So. 3d 263, 267 (Fla. 2d DCA 2019)). In this case, the trial court's lack of findings supporting its determination of the Wife's monthly needs and the Husband's ability to pay was not harmless, and on remand the trial court should make detailed findings regarding the same. *See Horowitz*, 273 So. 3d at 268.

## III. Child Support

The Wife argues that the trial court erred in calculating the Husband's income for child support purposes based only upon his 2023 financial affidavit, which not only reflected his lowest annual income for the five years for which he submitted documentation but also reflected a lower amount than his tax return for the same year. We also agree that this was an abuse of discretion.

"[T]he Florida Supreme Court and other district courts have suggested that a presumption arises from a spouse[']s historical earnings that supports a finding the spouse can continue to earn the same amount, absent evidence to the contrary." *Ghay v. Ghay*, 954 So. 2d 1186, 1190 (Fla. 2d DCA 2007) (citing *Garfield v. Garfield*, 58 So. 2d 166, 167 (Fla. 1952); *see also Waldera v. Waldera*, 306 So. 3d 1037, 1040 (Fla. 3d DCA 2020) (same); *Mata v. Mata*, 185 So. 3d 1271, 1272-73 (Fla. 3d DCA 2016) (same). In cases where a party's income fluctuates based on, as here, bonus or commission income, trial courts may average income for purposes of calculating child support or alimony. *See*

*Waldera*, 306 So. 3d at 1040.  There is no requirement to do so, however, as long as the child support award is "based upon competent, substantial evidence of a party's net income."  *Dep't of Revenue ex rel. Shirer v. Shirer*, 197 So. 3d 1260, 1264 (Fla. 2d DCA 2016) (quoting *Hoffman v. Hoffman*, 98 So. 3d 196, 197 (Fla. 2d DCA 2012)).

In this case, the Husband's income between 2019 and 2022 did not fluctuate much except for 2020, and his tax returns, pay stubs, and financial affidavits for those years reflect that he earned between $300,000 and $330,000.  The Husband's tax return for 2023 reflected income of $248,000, and in May 2023 he listed his income on his financial affidavit as approximately $224,000.  The parties disputed the Husband's representation of his 2023 income—the Wife argued that he elected not to "cash out" stock bonus shares from his employer that he historically had, for example, and the stock sales significantly contributed to the Husband's annual income in years past.  Regardless, the fact that the Husband's 2023 tax return contained a higher figure than his self-reported financial affidavit required an explanation or finding.  There is no basis we can determine in the record that explains why the trial court calculated the Husband's income based solely on one financial affidavit prepared in anticipation of litigation when there was a tax return for the same year and several years' worth of prelitigation income history to draw upon.  "[T]he case law is 'well-settled that a trial court errs by failing to make findings of fact regarding the parties' incomes when determining child support.' "  *J.A.D. v. K.M.A.,* 264 So. 3d 1080, 1083 (Fla. 2d DCA 2019) (quoting *M.M. v. J.H.*, 251 So. 3d 970, 972 (Fla. 2d DCA 2018)).

**IV.   Attorney's fees**

13

"Any determination regarding an appropriate award of attorney's fees in proceedings for dissolution of marriage, support, or child custody begins with section 61.16." *Rorrer v. Orban*, 215 So. 3d 148, 149 (Fla. 3d DCA 2017) (quoting *Rosen v. Rosen*, 696 So. 2d 697, 699 (Fla. 1997)). Under *Rosen*, our prevailing case law, the trial court is tasked with determining entitlement to attorney's fees based on one spouse having a financial need for recovery and the other spouse having the ability to pay. The intent behind section 61.16 is to ensure both parties have similar ability to retain competent legal counsel. *See Levy v. Levy*, 900 So. 2d 737, 748-49 (Fla. 2d DCA 2005).

In this case, the trial court summarily denied the Wife's request for attorney's fees even after advising the parties at trial that the court would hear the issue at a later date. This was error. "Where the parties stipulate that the court will reserve the issue of attorney's fees to be decided at a subsequent hearing, such an agreement is binding upon the court and ruling on the issue contrary to the stipulation is erroneous." *Jurasek v. Jurasek*, 67 So. 3d 1210, 1212 (Fla. 3d DCA 2011); *see also Singer v. Singer*, 347 So. 3d 364, 366 (Fla. 4th DCA 2022) (same); *Flores v. Flores*, 666 So. 2d 605, 605 (Fla. 5th DCA 1996) (same). On remand, the trial court must hear the parties' arguments and receive evidence, if necessary, on the Wife's motion for attorney's fees.

## V.   Conclusion

We reverse the amended final judgment with regard to the trial court's award of bridge-the-gap alimony, child support, and attorney's fees. We affirm all other issues without comment. On remand, the trial court shall make specific findings of fact with regard to the Wife's need for alimony, the Husband's ability to pay, and the calculation of the parties' income and expenses based on competent substantial evidence.

14

The trial court shall base the Husband's child support obligation using competent substantial evidence to determine his reasonably expected annual income. And the Wife and the Husband should have the opportunity to present evidence and argument to the court establishing their need for and ability to pay attorney's fees, respectively. The trial court may reopen the evidence and testimony on remand, if necessary, due to the length of time that has passed since trial.

Affirmed in part, reversed in part, and remanded with instructions.

KELLY, J., concurs in result.
ATKINSON, J., concurs in part and dissents in part with opinion.

ATKINSON, J., Concurring in part and dissenting in part.

I concur in Part IV of the majority opinion. I respectfully dissent from parts II and III of the majority opinion.

_____

Opinion subject to revision prior to official publication.

15